75 P.2d 334

**ALBUQUERQUE LUMBER CO. v. BUREAU OF REVENUE OF NEW MEXICO et al.**

**No. 4331.**

Supreme Court of New Mexico.

Dec. 7, 1937.

Rehearing Denied Jan. 29, 1938.

Frank H. Patton, Atty. Gen., and Richard E. Manson, Asst. Atty. Gen., for appellants.

John F. Simms and W. A. Keleher, both of Albuquerque, and J. O. Seth, of Santa Fé, for appellee.

BICKLEY, Justice.

Plaintiff (appellee) conducted a department of its business known as the heating and supply department, and from such department made sales of supplies, including bathtubs, closet combinations, kitchen sinks, laundry tubs and accessories, water pipes, valves, fittings, soil pipes, boilers, radiators, hot water heaters, and accessories thereof. It is alleged that the said articles were sold only to plumbing and heating contractors, also known as master plumbers, who purchased such supplies from plaintiff exclusively for the purpose of placing and installing said merchandise in the buildings, edifices, and premises of others. Plaintiff also made sales of lumber, shingles, roofing materials, insulation, nails, cement, and other building materials to general contractors.

Appellant Bureau of Revenue (defendant) required plaintiff to pay, and plaintiff paid under protest, an amount equal to 2 per cent. of the gross receipts of such business on defendant's theory that plaintiff was engaged in the business of selling such commodities at retail and subject to the tax provided for under the provisions of subsection D of section 201, chapter 73, Laws 1935.

Plaintiff brought suit to recover the difference between one-eighth of one per cent., being the tax required to be paid by persons engaged in the business of wholesale merchandising of goods, wares, materials, and commodities under subsection C of said section, and the 2 per cent. tax which was so paid. The appellant demurred to the complaint on the ground that the face there-

of disclosed that the sales in question were retail sales and not wholesale sales as contended by plaintiff. The district court overruled the demurrer and judgment was rendered against the defendant, who appeals.

If the transactions are wholesale sales, the judgment must be affirmed. That is the sole point in the case.

The terms "retail" and "wholesale" are defined in section 103(h) and (i), as follows:

"The term 'retail,' except as herein otherwise provided, means the sale of tangible personal property for consumption and not for re-sale in the form of tangible personal property, and 'retailer' means every person engaged in the business of making sales at retail.

"The term 'wholesaler' or 'jobber' means any person who sells tangible personal property for resale and not for consumption by the purchaser, except as herein otherwise provided."

Section 201, subsection F, of the act, levying a tax of one per cent. upon the gross receipts of all contractors, is as follows: "At an amount equal to one per cent of the gross receipts of the business of every person engaging or continuing in the business of contracting for the construction, reconstruction, repair or improvement, in whole or in part, of any buildings, dwelling, edifices, highways, bridges, dams, canals, pipe-lines, railroads, terminals, the drilling of wells, oil wells, sinking of shafts or driving of tunnels in mines, or any other simi-

lar work or performance in which each person covenants or bargains or agrees to perform said work for a stipulated sum, or at cost plus a percentage or additional sum; provided that there shall be deducted from such gross receipts for the purpose of the tax imposed by this subdivision, the cost of all materials used in the performance of any such contract on which the tax imposed by subdivision D of this section has been paid."

■ It is a familiar rule of statutory construction that in the absence of anything in the context to the contrary, common or popular words are to be understood in a popular sense. Lewis' Sutherland Statutory Construction (2d Ed.) § 389. Since the act in question, at section 103, defines quite a few words and phrases, but omits to define the term "sale," this circumstance lends support to the rule of construction heretofore adverted to. We attribute to the Legislature, therefore, the intent of using the word "sale" as it is generally and popularly used.

■■ A person engaged in the business of wholesale merchandising of goods, wares, and commodities is a "wholesale merchant or dealer," and one who is engaged in the business of selling goods, wares, and merchandise at retail is a "retail merchant or dealer." They are engaged in the wholesale and retail trade, respectively.

"A trader is one who sells goods substantially in the form in which they are bought and one who has not converted them into another form of property by his skill and labor." 26 R.C.L., Taxation, § 212.

■ In the case of Commonwealth v. Gormly, 173 Pa. 586, 34 A. 282, the court said: "A plumber who, in putting in steam and water heating apparatus, buys the necessary articles and materials from dealers in plumbing materials; works himself, employing other plumbers to help; gets paid by charging for the labor and adding a percentage to the cost of the materials; has no place of business but his workshop, and does not do business as a buyer and seller, —is not a 'dealer in goods, wares and merchandise,' within the meaning of the laws imposing mercantile license taxes." In reaching this conclusion the court said: "In the present case the defendant is neither a 'manufacturer' nor a 'dealer,' in the strict sense of the latter term. He does not buy to sell the articles he uses; he does not sell them, in the literal sense; and he only buys them when he has a job of work to do for which he requires them. As between the dealer and himself, he is the consumer. He needs the articles in his business. He puts them into buildings, putting his own work upon them; but when they are placed there they are not in the same shape as when he received them, but as a compact whole, composed of all the materials required for the purpose, no matter from what source he obtained them. For instance, a complete steam heating apparatus requires boilers, radiators, pipes, valves, one or more furnaces, and other articles, to make a complete work. Some of these

things might be obtained from one dealer and others from other dealers; but the ultimate thing which the defendant supplies to his customer is not the thing he bought. His own work, too, must be added,—a necessary and expensive part of the completed whole, as all persons know who have such bills to pay. How, then, can it be said that such a person is a dealer, when the thing which he sells is not the thing which he buys?" This decision was followed in a later Pennslyvania case, Commonwealth v. Lutz, 284 Pa. 184, 130 A. 410, where it was held: "Plumber, selling materials * * * on which he expends no labor, is a 'dealer' within statute [Act May 2, 1899 (P.L. 184)], imposing mercantile tax."

In State v. J. Watts Kearny & Sons, 181 La. 554, 160 So. 77, 78, the taxpayers contended that under the Louisiana Retail Sales Act sales to contractors were wholesale in character. The court rejected this contention, and in a well-considered opinion said:

"A contractor who buys building material is not one who buys and sells—a trader. He is not a 'dealer,' or one who habitually and constantly, as a business, deals in and sells any given commodity. He does not sell lime and cement and nails and lumber.

"His undertaking is to deliver to his obligee some work or edifice or structure, the construction of which requires the application of skill and labor to these materials so that, when he finishes his task, the materials purchased are no longer to be distinguished,

but something different has been wrought from their use and union. The contractor has not resold but has consumed the materials. Sales to contractors are sales to consumers, and, for this very reason, the Legislature did not include contractors and subcontractors in the term 'dealers for re-sale,' as used in section 7 of Act No. 205 of 1924, but has placed them in an entirely different classification in section 24 of that act. Consequently, contractors and subcontractors are not licensed at all as wholesale or retail dealers."

In York Heating & Ventilating Co. v. Flannery, 87 Pa.Super. 19, it was held that a contract for the installation of heating equipment was not a contract of sale governed by the Uniform Sales Act, but was a construction contract. The court said: "We are of opinion that the Sales Act [69 P.S. § 1 et seq.] has no application to the contract in suit. That statute is an act relating to sales—since amended to include choses in action (Act of April 27, 1925, P.L. 310 [69 P.S. § 42]). It defines a sale of goods as an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price; and a contract to sell goods as a contract whereby the seller agrees to transfer the property in goods to the buyer for a consideration called the price. The contract in suit was in no sense a contract of sale. It was a construction contract. The transfer of property in the fan, motor, pipe coil heater, air washer, reheater coils, condensation system,

duct system and steam piping was but incidental to the main purpose which was the furnishing of labor and the assembly of material in the erection and construction of a heating system. It would be just as proper to call a contract for the construction of a building a sale of the stone, brick, cement, wood, etc., which entered into the erection of the building. This plaintiff took specified materials and apparatus, manufactured and supplied by various dealers, and by assembling them and connecting them into a system designed by its engineers constructed a new and different unit, a completed heating system. The operation was one of building, or construction, not of sale, within the meaning of the Sales Act aforesaid. Where a dealer sells a machine or similar apparatus and the setting up or installation is but incidental to the sale, as in Farr v. Zeno, 81 Pa.Super. 509, the Sales Act applies; but where as here the contract is really a building or construction agreement and the furnishing of material and apparatus is merely an incident thereto, the Sales Act has no application."

In State v. Christhilf, 170 Md. 586, 185. A. 456, 458, it appears that the state sought to collect the tax from road and building contractors on the theory that they were selling materials used by them in constructing buildings and roads. The court rejected this theory, saying: "It is the contractor or builder who is the ultimate user or consumer of the materials which in one of these cases are converted and fabricated into a building and in the other into a road. In principle there is no difference between the two kinds of structures. Nor do we see the application of the case of the cobbler cited by the state in Western Leather & Finding Company v. State Tax Commission [87 Utah 227], 48 P.2d 526, for whether the shoes are new or repaired, they are still tangible personal property. More in line with the views of this court is the case of York Heating & Ventilating Company v. Flannery, 87 Pa.Super. 19, where it was said of the installation of a blower and heating system by contract: 'The contract in suit was in no sense a contract of sale. It was a construction contract. * * * It would be just as proper to call a contract for the construction of a building a sale of the stone, brick, cement, wood, etc., which entered into the erection of the building.'"

See, also, Lone Star Cement Corp. v. State Tax Commission, Ala.Sup., 175 So. 399; Mendoza Fur Dyeing Works v. Taylor, 272 N.Y. 275, 5 N.E.2d 818.

The reasoning of the foregoing decisions and others is more persuasive than opinions to the contrary cited by appellee.

The view we take is further supported by the provisions of section 201, subsection F, of the act, quoted supra. It is obvious that the legislators were here imposing a tax upon the privilege of conducting a business distinct from that of merchandising, trading, or dealing in commodities. If the Legislature regarded a

person who contracted to build a house for another as a dealer in merchandise and that he resold building materials to the owner of the building, there would be no apparent reason for the deduction from the gross receipts of the contractor of the cost of the materials used in the performance of such contract "on which the tax imposed by subsection D of this section has been paid." The Legislature might as well have employed the phrase *"consumed* in the performance of any such contract" when dealing with the deduction. We think from the context it is a fair interpretation that "used" and "consumed" express the same meaning. That these words are used interchangeably, see Century Dictionary, "consume" and "use." We think the contention of appellee that the deduction provision applies only to forms, scaffolds, tools, equipment, and other materials not becoming component parts of the finished product is without merit. A similar argument was repudiated in Rittenhouse & Embree Co. v. F. E. Brown & Co., 254 Ill. 549, 551, 98 N. E. 971, 972, where the court decided: "The words 'used in such building or improvement,' and 'used in construction,' [in section 7 of the Liens Act] mean more than employed in the process of construction as a means for assisting in the erection of the building. They mean used as a part of the construction, so that the material becomes part of the completed structure."

The term "consume" or "consumption" does not always imply an immediate destruction or "eating up" or extermination;

it may as well, and often does, contemplate the ultimate use to which all intermediate ones lead. One definition of "consume" given in Century Dictionary is "to make use of." In Moore v. American Transp. Co., 24 How., U.S., 1, 37, 16 L.Ed. 674, the court decided that " 'used' means 'employed.' " It is also obvious from the deduction provision contained in section 201, subsec. F, that the Legislature considered that the materials the contractor bought to be used or consumed in the performance of his contract were bought at retail and not at wholesale because no deduction is allowed on account of wholesale purchases.

From all of the foregoing it appears that the district court was in error in overruling the demurrer.

The judgment is reversed and the cause remanded, with directions to sustain the demurrer, and it is so ordered.

HUDSPETH, C. J., and SADLER, BRICE, and ZINN, JJ., concur.