Philadelphia, Appellant *v.* Goldfine.

Argued October 6, 1942.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Abraham L. Shapiro,* Assistant City Solicitor, with him *Ernest Lowengrund,* Acting City Solicitor, for appellant.

*Matthew S. Biron,* of *Weiss, Sylk & Biron,* for appellee.

OPINION BY BALDRIGE, J., December 11, 1942:

The City of Philadelphia passed an ordinance approved September 7, 1937, amended September 7, 1938, imposing a documentary stamp tax upon "any written obligation to pay money ...... and any executory contract for the payment of money ...... at the rate of five (5) cents for each one hundred ($100) dollars, or fraction thereof, of the value represented by such document." Under section 2 of the ordinance "documents" include: "(b) Any written obligation to pay money (except promissory notes and bank notes issued for circulation and notes issued to mutual insurance companies, payable only on the happening of certain contingencies), non-negotiable note, judgment note, and any executory contract for the payment of money which is executed or carried out in an instrument in writing (except promissory notes, checks and drafts), and each renewal of any of the foregoing documents ......"

The sole question before us is whether bailment leases for the hire of auto trucks, entered into between the defendant, Reuben Goldfine, and third parties, come within the provisions of the ordinance. Our answer is in the negative.

The action was initiated by the City of Philadelphia bringing a bill in equity averring that the form of written contract used by the defendant, engaged in renting trucks and other motor driven vehicles within the city, fell within the terms of the ordinance and that the defendant failed to affix stamps thereto. The plaintiff

prayed for a discovery, imposition of penalties, and that the defendant be compelled to comply with the terms of the ordinance. The chancellor filed an adjudication and entered a nisi decree granting the relief sought by the plaintiff. The court en banc concluded that the defendant's leases were not taxable under the ordinance, sustained defendant's exceptions, and entered a decree dismissing the bill. Plaintiff appealed.

The form of the agreement used by the defendant provides that defendant shall supply a motor truck to the customer for a term of years and service it. The fixed weekly rental is $23 per week payable "independently of the use of the motor vehicle for which the lessee shall have the privilege of operating said motor vehicle 200 miles per week." Any operation beyond two hundred miles per week is paid for by the lessee at the rate of six cents per mile. Title to the leased vehicles remains in the lessor. It seems quite clear from a reading of this entire agreement that it does not primarily contemplate that the lessee will purchase the vehicle, but he may elect to do so under the termination clause which provides: that the lessee may terminate the agreement on any annual anniversary date upon payment of the initial cost of the vehicle to the lessor, less twenty per cent per year for depreciation. The lessor may terminate for breach of any of the conditions in the lease, in which event lessor may require lessee to pay the initial cost of the vehicle, less twenty per cent per year for depreciation.

The lessor agrees to maintain the leased trucks in good repair "to furnish at his own expense, all fuels, oils, lubricants and tires necessary for the operation of said motor vehicles" also to furnish "garage storage space, together with complete garage service for the motor vehicles operated under this lease, including washing, polishing cleaning, oiling, greasing and all adjustments," to register and to obtain a license, and to

carry insurance to protect the lessor and lessee against liability to third parties.

There are numerous clauses in the bailment contract placing certain contingent additional costs of maintenance and operation upon the lessee, viz., paragraph 3 (a) providing for "additional rental for any increase in City, State or Federal taxes on fuels, oils, lubricants and tires"; paragraph 3 (d) covering possible increase of license fees, etc. 4 (e) dealing with increased insurance rates due to lessees' possible unfavorable accident record; 4 (h) providing the lessee will reimburse lessor for all damages resulting from the illegal use of the vehicles leased; 4 (k) stipulating lessee will pay increased cost of gasoline to lessor over two cents per gallon; 4 (i) providing the lessee pay lessor for any *sales tax* imposed on rentals received by lessor; 5 (g) providing that if maintenance costs increase disproportionately lessor may cancel unless the customer agrees to assume them.

The ordinance in question is a taxing statute, contains penal provisions, and is subject to the rule of strict construction: Section 58 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558; *Scranton v. O'Malley Mfg. Co.*, 341 Pa. 200, 204, 19 A. 2d 269; *Reading Trust Co. Tax Assessment Case*, 143 Pa. Superior Ct. 277, 285, 17 A. 2d 625. Any doubt as to the imposition of the tax should be resolved in favor of the taxable: *Barber's Estate*, 304 Pa. 235, 244, 155 A. 565; *Krause's Estate*, 325 Pa. 479, 483, 191 A. 162.

We find nothing in the ordinance which indicates an intention to tax the kind of contracts here involved. They are in reality executory contracts of bailment for the hire of motor vehicles, and not simply "executory contracts for the payment of money" within the meaning of that phrase as used in the ordinance. The ordinance specifies "any written obligation to pay

money" and expressly mentions non-negotiable notes and judgment notes as taxable. These taxables comprise a definite type of written unilateral obligation to pay money, long recognized as subject to taxation under similar statutes. They are quite dissimilar to, and clearly distinguishable from, a bilateral contract, executory on both sides, with mutual obligations as with defendant's leases.

In our opinion the general phrase "any executory contract for the payment of money" following the specifically mentioned taxables (non-negotiable and judgment notes) is an implied exclusion of all other types of executory contracts under the well established rule that the express mention of one thing implies the exclusion of another (Crawford Statutory Construction (1st Ed. 1940), §195, p. 334; *Fazio v. Pittsburgh Rys. Co.,* 321 Pa. 7, 11, 182 A. 696; *Dixon's Case,* 138 Pa. Superior Ct. 385, 390, 11 A. 2d 169) and must be construed ejusdem generis with those particularly set forth, as referring to obligations of the same genus as those specifically enumerated. As stated in Crawford's Statutory Construction, supra, §191, p. 326: "Where general words follow the designation of particular things, or classes of persons or subjects, the general words will usually be construed to include only those persons or things of the same class or general nature as those specifically enumerated. ...... This is the rule known as 'ejusdem generis', and it is founded upon the idea that if the legislature intended the general words to be used in an unrestricted sense, the particular classes would not have been mentioned. See, also *General Motors Acceptance Corporation v. Foley,* 311 Pa. 477, and cases cited p. 482, 166 A. 909.

Furthermore, the weekly rentals to become due under defendant's contract are not fixed and determined in amount as in the ordinary non-negotiable note or judgment note. Many variable factors, as noted above,

are payable as rent under the contract, and determinable only weekly or in the future as the contract is carried out by the parties. In such a contract it would be impossible to compute the exact "value" or "full amount of such obligation" as defined in the ordinance, and to apply stamps at the rate of five cents for each $100 of such value. To state the city's contention that the minimum rental of $23 per week, multiplied by the number of weeks, represents the value of the instrument, is to disclose the difficulty of applying this ordinance to the present situation.

Executory bilateral contracts, involving the performance of acts by one party before liability for payment arises, have been held in other jurisdictions not to be solely "obligations to pay money" within a statute imposing a stamp tax on documents. *Lee v. Kenan et al.,* 78 F. 2d 425, 100 A. L. R. 869 (C.C.A. 5th) involved a Florida statute imposing a documentary stamp tax on "promissory notes, non-negotiable notes, written obligations to pay money, ......" The court held a contract to furnish electric power, at graduated rates depending upon the amount used, etc., was not "a written obligation to pay money" within the meaning of the statute, stating, (p. 426 of 78 F. 2d) : "It does not fix a debt and promise its payment. It is only an executory agreement for the sale of a commodity, and no obligation to pay money arises under it unless and until the commodity is delivered ...... This contract on its face is not a direct obligation to pay money, but one to take electric current on certain conditions. On doing that, an obligation to pay money will arise. No one can tell from the face of this paper what amount ...... of stamps should be affixed." See, also, *Metropolis Pub. Co. et al., v. Lee,* Fla. 170 So. 442; *United States v. Isham,* 17 Wall, 496, 21 L. Ed. 728; and short Annotation in 100 A. L. R. 871.

We are of the opinion that the court en banc correctly construed the language of the ordinance.

The decree of the court below is affirmed at appellant's costs.