## Kohn *v.* Philadelphia et al., Appellants.

Argued October 9, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Abraham L. Shapiro,* with him *Abraham Wernick,* Assistant City Solicitors, and *Ernest Lowengrund,* Acting City Solicitor, for appellants.

*Harold E. Kohn,* with him *Murdoch, Paxson, Kalish & Green,* for appellee.

OPINION BY RHODES, J., March 2, 1943:

The City of Philadelphia, on February 8, 1938, adopted an ordinance, subsequently amended and since repealed, which was entitled "An ordinance to provide revenue by imposing an emergency sales tax upon sales of certain tangible personal property ......"

Plaintiff, a dealer in plumbing fixtures, by a bill in equity, sought to restrain the collection of certain taxes under this ordinance. Defendants' answer admitted substantially all the allegations of the bill; and the court below thereupon sustained plaintiff's objections, and found that the sales made by plaintiff under the circumstances described in the bill were wholesale sales and not taxable under the ordinance. The parties stipulated that the court enter a final decree in accordance with its opinion on the objections to the answer.

Defendants have appealed from the final decree.

The question presented for determination is whether certain sales by plaintiff upon which no tax was collected by him were retail sales within the meaning of the ordinance, imposing a tax upon retail sales as defined therein.

It appears that the question arises on the facts averred in plaintiff's bill and admitted in defendants' answer. During the effective period of the ordinance plaintiff was engaged in the wholesale and retail plumbing supply business. In this business he sold various plumbing supplies, including enameled iron fixtures,

such as bathtubs, sinks and lavatories; vitreous china fixtures, such as tanks and bowls; cast iron fixtures, such as furnaces and radiators; and miscellaneous fixtures, such as gas water heaters, storage boilers, stone wash trays, spigots, pipes, etc. Certain sales made by him during that period were concededly made at retail upon which the tax was collected and paid. Certain other sales made during the same period were concededly made for resale within the meaning of the ordinance, and no tax was due on such sales. The remainder of plaintiff's sales, $25,577.08, was made to plumbers who purchased the fixtures for installation for their customers. The fixtures were not changed in form or appearance by the plumber, but were installed in exactly the same form in which they were purchased, and remained separately identifiable after installation, although they may have become part of the real estate to which they were affixed. The four methods employed by plumbers in charging their customers, which are set forth in plaintiff's bill and admitted by defendants' answer, are concisely stated by the court below as follows: "The first two methods consist of billing the customer separately for the fixtures and the service for installing them. Under this method, the fixtures might be sold at a fixed price including a profit for the plumber or on a cost plus basis. The second two methods consist of a lump sum billing, under the first of which the plumber computes the sum on a basis of the cost of the fixtures to him plus a profit and in addition, his charge for installation service, or the total sum may be an upset or guaranteed price which may not be exceeded and which is computed by the plumber on the basis of the cost to him of the fixtures plus a profit and in addition, a charge for services."

Some plumbers conduct retail stores where they sell plumbing fixtures to anyone desiring to purchase them. Others do not conduct a regular store, but merely fur-

nish fixtures and install them when they succeed in obtaining a contract.

Defendants contend that all such sales made by plaintiff were sales at retail except where the plumber conducted a regular retail store or where the plumber made separate charges to his customers for fixtures and the installation service. This position is in harmony with the rules and regulations issued by the Receiver of Taxes to govern cases of contractors engaged in the repair, alteration, improvement, and construction of real property. But these regulations are not controlling unless they are in harmony with the provisons of the ordinance. The court below in its opinion said: "The power of the Receiver of Taxes to make regulations, however, does not give him the power to rewrite the Ordinance. He may not impose regulations which are arbitrary and unreasonable as applied to the plaintiff and others of his class and require them to trace the billing methods used by plumbers to whom they sell in disposing of thousands of fixtures purchased, nor can the methods adopted by the plumber in charging the owner of real property change the nature of the transaction between the plaintiff and the plumber." We are likewise of the opinion that it would be entirely improper and illogical to determine the nature of the transactions between plaintiff and plumbers on the basis of the latter's bookkeeping methods.

The ordinance did not attempt to tax all sales. By section 2, a tax was levied during the period commencing March 1, 1938, and ending December 31, 1938, at the rate of two per centum upon the amount of every sale of "(a) tangible personal property sold at retail," with certain exceptions with which we are not concerned. Other pertinent provisions in the ordinance read as follows:

Section 1 (d). "The word 'sale' or 'selling' means any transfer of title or possession or both, exchange or

barter, license to use or consume, conditional or other-wise, in any manner or by any means whatsoever for a consideration, or any agreement therefor, and may include the rendering of any service specified in Section 2 of this ordinance, or for any purpose other than for exhibition purposes only."

Section 1 (f). "A 'retail sale' or 'sale at retail' means a sale to a customer, or to any person for any purpose other than for resale in the form of tangible personal property." .

In the interpretation of the ordinance the rule of strict construction is to be applied, and any doubt as to the imposition of the tax should be resolved in favor of the alleged taxable. Statutory Construction Act of May 28, 1937, P. L. 1019, §58, 46 PS §558; *City of Philadelphia v. Goldfine,* 151 Pa. Superior Ct. 59, 29 A. 2d 233.

We think it is plain that the term "retail sale" or "sale at retail" must include the meaning of "sale" as defined by Section 1 (d) of the ordinance. The ordinance contains its own definitions, and therefore the meaning of the same terms at common law or in other enactments are not controlling. *Blauner's, Inc. et al. v. Philadelphia et al.,* 330 Pa. 342, 349, 198 A. 889; *Philadelphia Association of Linen Suppliers et al. v. Philadelphia et al.,* 139 Pa. Superior Ct. 560, 564, 12 A. 2d 789. We find nothing in the ordinance which would bring plaintiff's questioned sales as described within its taxing provisions. We agree with the view of the court below that under the ordinance the trans-action between the plumber and the owner of the real estate was the retail sale—a "transfer of title or pos-session or both ...... in any manner or by any means whatsoever for a consideration"—"to a customer, or to any person for any purpose other than for resale in the form of tangible personal property." The fixtures keep the same form and remain separately identifiable

upon transfer by the plumber. The transactions between the plumbers and their customers constitute the taxable sales within the ordinance; consequently, the previous transactions between plaintiff and the plumbers were not retail or taxable sales within the provisions or within the intendment of the ordinance.

In *Bradley Supply Co. et al. v. Ames,* 359 Ill. 162, 194 N.E. 272, the Supreme Court of Illinois had a similar question before it. In that case, where it was held that the plaintiffs, who were dealers in plumbing supplies, were not liable to pay the tax, there appears the following (194 N.E. 272, at pages 275, 276) : "Plaintiffs contend that, since a 'sale at retail' is defined by section 1 of the act (Smith-Hurd Ann. St. c. 120, §440) as 'any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration,' a technical sale is not contemplated by the Legislature, and that the transfer of title from the contractor to the owner of the land is a transfer that is within the act. ...... If the transfer of title to the supplies sub judice from the contractor to the owner of the real estate is a 'sale at retail' within the meaning of the act, previous vendors are excluded from the act. The contractor is liable because he, and not the plaintiffs, makes the sale for use or consumption. ...... The question before us is, not whether the transaction between the contractors and owners of land is a sale of personalty as that term is defined at common law in the decisions of courts or in the Uniform Sales Act, but whether it is a transfer of tangible personal property to the purchaser for use or consumption and not for resale within the meaning of the Retailers' Occupation Tax Act. The definition of a 'sale at retail' as 'any transfer of the ownership of, or title to, tangible personal property,' is broad enough to cover the trans-

fer of title made by a contractor who attaches tangible personal property to real estate in accordance with a contract. It is clearly a transfer of title for a valuable consideration." See *Mahon et al. v. Nudelman et al.,* 377 Ill. 331, 36 N. E. 2d 550.

The facts in the present case are not controlled by *Com. v. Gormly,* 173 Pa. 586, 34 A. 282, and *Com. v. Lutz,* 284 Pa. 184, 130 A. 410, relied on by defendants. Those cases held that in certain branches of a plumber's business he was not comprehended within the term dealer under the Mercantile License Tax Act, 72 PS §2621 et seq., and not liable to pay a mercantile license tax thereon.[1] The mercantile tax is not a tax on sales, but it is a tax on the privilege of doing business in a certain manner; the sales tax under the City Sales Tax Ordinance was imposed upon transactions whereby property was acquired. *Blauner's, Inc., et al. v. Philadelphia et al.,* supra, pp. 346, 347.

Other cases cited by defendants (*York Heating & Ventilating Co. v. Flannery,* 87 Pa. Superior Ct. 19; *Lekovicz v. Gobbie,* 91 Pa. Superior Ct. 33) involved the application of the Sales Act of 1915 to construction contracts. *General Shale Products Corp. v. Struck Construction Co.,* 37 Fed. Supp. 598, involved the interpretation of the Robinson-Patman Act, forbidding price discrimination. In *Albuquerque Lumber Co. v. Bureau of Revenue of New Mexico et al.,* 42 N.M. 58, 75 P. 2d 334, the statute, while defining a number of words and phrases, omitted the definition of the term "sale." The court there said (75 P. 2d 334, at page 336): "We attribute to the Legislature, therefore, the intent of using the word 'sale' as it is generally and popularly used." None of these cases has any relevancy

---

[1] Cf. *Com. v. Pennsylvania Heat & Power Co.,* 333 Pa. 46, 3 A. 2d 412, wherein it was held that a person who installed oil burners was subject to the Mercantile License Tax as a retail dealer.

here where a "sale" is defined by the ordinance. As the court below pointed out, we are "unconcerned with the technical requisites of a sale at common law or within the meaning of the same term in the special context of other enactments." *City of St. Louis et al. v. Smith* (Mo.) 114 S.W. 2d 1017, and *State v. Christhilf et al.*, 170 Md. 586, 185 A. 456, can be distinguished on their facts (materials such as lumber, brick, and cement used in the construction of buildings and public ways). See *Herlihy Mid-Continent Co. et al. v. Nudelman*, 367 Ill. 600, 12 N.E. 2d 638. Other differences, not necessary to relate, also appear.

We do not agree that the reasoning in *Atlas Supply Co. et al. v. Maxwell*, 212 N.C. 624, 194 S.E. 117, is applicable to or controlling of the admitted facts in the case before us.

All the assignments of error are overruled.

The decree of the court below is affirmed, at cost of defendants.