## Paper Products Company, Inc., Appellant, *v.* Pittsburgh.

Argued November 19, 1956. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, and CARR, JJ. (RHODES, P. J., and ERVIN, J., absent).

236

*Kim Darragh,* for appellant.

*Oscar G. Peterson,* Assistant Solicitor, with him *Mortimer B. Lesher,* Solicitor, for School District of Pittsburgh, appellee.

*J. Frank McKenna, Jr.,* Solicitor, and *Albert D. Brandon,* Assistant Solicitor, for City of Pittsburgh, appellee.

OPINION BY WOODSIDE, J., March 20, 1957:

The question before us in this appeal from the County Court of Allegheny County is whether the appellant made certain sales as a "wholesale dealer or vendor," or whether it made them as a "retail dealer or vendor," as those terms are used in the Mercantile License Tax Act of June 20, 1947, P. L. 745, Section 1, 24 PS §582.1 et seq. and Ordinance No. 488 of the City of Pittsburgh, enacted under authority of the Act of June 25, 1947, P. L. 1145 (53 PS §§2015.1-2015-8).

The court below adopted the contention of the city and school district that the taxpayer made the disputed sales as a retail vendor or dealer.

The aforesaid Act imposing a mercantile license tax in school districts of the first class provides, inter alia, in Section 1, 24 PS §582.1 as follows:

"(2) 'Wholesale dealer' or 'Wholesale vendor' shall mean any person who sells to dealers in, or vendors of, goods, wares and merchandise and to no other persons.

"(3) 'Retail dealer' or 'Retail vendor' shall mean any person who is a dealer in, or vendor of, goods, wares and merchandise who is not a wholesale dealer or vendor."

In Section 4, 24 PS §582.4 the act provides, inter alia, as follows: "Every person engaging in any of the following occupations or businesses in any school district of the first class shall pay an annual mercantile license tax at the rate set forth:

"(1) Wholesale vendors or dealers in goods . . . ½ mill . . .

"(2) Retail vendors, or dealers in goods . . . 1 mill . . .

"(3) Wholesale and retail vendors or dealers in goods, wares and merchandise, at the rate of one-half (½) mill on each dollar of the volume of the annual gross wholesale business transacted by him, and one (1) mill on each dollar of the volume of the annual gross retail business transacted by him;"

Identical provisions are contained in the Ordinance of the City of Pittsburgh which is before us for interpretation, except that the rates are double the above amount, the paragraphs are designated differently, and "city" is substituted for "school district of the first class."

Paper Products Company, Inc., appellant, in this case, is engaged in the paper supply business, and is subject to the above taxes. The appellant filed the required reports and paid the taxes which the reports indicated were due. In 1953 the taxing authorities audited the records of the appellant and assessed addi-

tional taxes for the years 1948 to 1953 both inclusive, claiming that sales reported by the taxpayer as wholesale transactions were retail sales under the act and ordinance. The additional taxes thus assessed were paid by the appellant under protest, it contending that certain of the sales upon which it was taxed as a retailer were made by it as a wholesaler. Some of the appellant's sales were admittedly made by it as a wholesaler and others as a retailer. As to still other sales there is a dispute which we are here called upon to settle.

The taxing authorities admit that sales made by appellant during the years in question to dealers or vendors who in turn sold the same items in the same form in which they had been purchased from the appellant, constituted wholesale business transacted by the corporation and are taxable at the rate imposed upon wholesale business, and that these sales constituted 36.68% of the gross sales of the appellant made during the years in question.

Appellant admits that the sales it made to various organizations and institutions, such as hospitals, municipalities, and other institutions which were not vendors of goods, wares and merchandise, were properly taxable at the retail rate under the wording of the statute and the ordinance. It is agreed that these sales constituted 23.47% of the gross sales made by the appellant during the years in question.

The remaining sales made by the appellant were of two types.

One of these consisted of sales of various container or packaging items to dealers or vendors of goods, wares and merchandise, who, in turn, used the containers directly in connection with the products sold by them, and which container and packaging items left the

premises of the customers of Paper Products Company, Inc. as a part of the purchase or sale made of their products. These sales constituted 30.07% of the gross sales of appellant made during the years in question.

The other consisted of sales of items such as toilet paper, napkins, cups and the like, to dealers or vendors of goods, wares and merchandise, which were used by these dealers or vendors on their own premises, by their own employees, and were not used directly in connection with the products which they sold. These constituted 9.78% of the gross sales of appellant made during the years in question. The sales referred to in this and the preceding paragraph are the sales over which the disputed tax arises.

The definitions of the above act and ordinance leave a void which must be filled by judicial decision. It would seem from the definition of "wholesale dealer or vendor" that one could not be a wholesaler if he sold *any* goods to any person other than a dealer and vendor, and that if a dealer or vendor sold only to another dealer or vendor he would be a wholesaler regardless of whether the goods sold were for the purchaser's private use or for resale. We think neither such result was intended by the legislature.

The tax imposition section quoted above clearly shows that the legislature intended that a vendor or dealer could be both a wholesaler and a retailer, and that the lower tax rate should be applied to the gross wholesale business transacted by the taxpayer and the higher rate to the gross retail business transacted by him.

To hold that the seller of an article to a physician or a mechanic for his personal use would pay the retail rate of tax, and the seller of the same article to a merchant for his personal use would pay the wholesale

rate is not only an unreasonable result presumed not to be intended by the legislature, but may be unconstitutional as an improper classification of subjects for taxation. See Section 52(1) of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552, and Article 9, Section 1 of the Constitution of Pennsylvania and the cases decided thereunder.

In defining wholesale dealer or vendor as one who sells to another vendor or dealer, the legislature must have had in mind that the sale would be made to the purchaser in his capacity as a vendor or dealer, or, in other words, for the purpose of resale.

Rejecting the contention of a taxpayer that sales of machinery were wholesale because of the hugeness of the articles sold, the Supreme Court specifically held in *Brown & Zortman Machinery Co. v. Pittsburgh,* 375 Pa. 250, 256, 100 A. 2d 98 (1953) that under the above definition of a wholesale dealer or vendor the test is whether the taxpayer's customer buys for the purpose of resale.

The toilet paper, napkins, cups and similar products which were sold by the appellant and used by the purchasers, or their employees, on their own premises should be classified as retail business for the purpose of determining the tax rate regardless of whether they were sold to a merchant, physician or any other person. It is clear from the opinion of Justice MUSMANNO in *Brown & Zortman Machinery Co. v. Pittsburgh,* supra, that the 9.78% of the gross sales of the appellant referred to above were retail transactions, and the tax should be imposed upon the appellant for that percentage of its gross sales at the retail rate.

The Supreme Court held in *Hughes v. Pittsburgh,* 379 Pa. 145, 108 A. 2d 698 (1954) that under the above definitions contained in the ordinance any goods not

sold to dealers in or vendors of goods, wares and merchandise were retail transactions. This the appellant admits settles the question of the sales it made to hospitals, municipalities, institutions and similar groups which constitute the 23.47% of its gross business referred to above.

These cases of the Supreme Court, however, do not settle the question of whether or not the containers, bags, boxes, paper and similar articles used to carry or hold other products are "resold" by the customers of the appellant.

As far as we have been able to ascertain there are no appellate court cases on the subject in Pennsylvania.

The Pennsylvania appellate court cases cited in the briefs are not of much help in this case. *Hughes v. Pittsburgh*, supra, holds that a different definition of "wholesaler" must be applied to the act and ordinance here in question than was applied to the State Mercantile Act of May 2, 1899, P. L. 184. *Rieck-McJunkin Dairy Co. v. Pittsburgh School District*, 362 Pa. 13, 66 A. 2d 295 (1949), and *Com. v. Bay State Milling Co.*, 312 Pa. 28, 167 A. 307 (1933), consider the question of whether the taxpayers were dealers or manufacturers. *Kohn v. Philadelphia*, 151 Pa. Superior Ct. 635, 30 A. 2d 672 (1943), dealing with plumber supplies, has distinguishing facts, and is interpreting a different type of law.

In *Pittsburg Brewers' & Bottlers' Supply Company's Mercantile Tax*, 38 Pa. Superior Ct. 121 (1909) the question was whether under the Act of 1899, supra, one who makes to sell is a dealer, or whether only one who buys to sell can be classified as a dealer. In holding that one who makes to sell is a dealer under the aforesaid act the court apparently classified a sale

of such items as bottle caps to a brewer as a wholesale transaction, but since the classification of these sales was not the issue involved in the case, and since the court was applying "wholesale" under an Act in which the term had a different meaning than here (See *Hughes v. Pittsburgh,* supra), we get little help from that case.

The question of whether bags, boxes, containers, wrapping paper, and similar articles used to carry or hold other products are "resold", naturally arose under the Consumers Sales Tax Act of July 13, 1953, P. L. 389, as amended. The Department of Revenue in Regulation 212 provided, inter alia, that where delivery of tangible personal property sold to the ultimate consumer is accompanied by a container or other product without which delivery of the product so sold is impracticable because of its contents, the ultimate consumer of said property will also be deemed to be the ultimate consumer of said container or other products, and the sale of such container or other product to any seller of such property shall be deemed to be a sale for the purpose of resale, and exempt from tax.

The legislature was not dissatisfied with this administrative interpretation, for when the above Sales Act had expired and the legislature enacted the Selective Sales and Use Tax Act of March 6, 1956, P. L. 1228, as amended by the Act of May 24, 1956, P. L. 1707, it substantially incorporated the administrative ruling into the statute by providing in Section 203, 72 PS §3403-203, "The tax imposed by section 201 shall not be imposed upon . . . (i) The sale at retail, or use of wrapping paper, wrapping twine, bags, cartons, tape, rope, labels, nonreturnable containers and all other wrapping supplies, when such use is incidental to the delivery of any personal property, except that any

charge for wrapping or packaging shall be subject to tax at the rate imposed by section 201."

This, of course, is not conclusive of the meaning to be given that statute and ordinance before us, but from it we gather that both the administrative officers and the legislature of this Commonwealth have considered and treated products of the type here in question as though they were sold for resale when they were used by the purchaser to wrap or pack other products which were sold.

In Ohio a similar administrative rule was made under its Sales Tax Act, and was approved by its Supreme Court. *Kroger Grocery and Baking Co. v. Glander*, 149 Ohio 120, 77 N.E. 2d 921 (1948).

This seems to be a reasonable conclusion. When a customer at the corner drug store asks for ice cream, which the clerk places in a container or coffee which he places in a paper cup, or razor blades which he places in a paper bag, it is the intent that the title and possession to the container, the cup and the bag shall, and in law they do, pass from the merchant to the customer.

There was a time when packing and wrapping of merchandise was rare. Not too many years ago in Philadelphia the housewives bought "dippers" of pepper pot from the cook-peddler, and in Boston the family crock was taken to the nearest bakery each Saturday for baked beans, and in Harrisburg milk was purchased from a pail, and everywhere crackers were sold from a barrel.

Today the container has become so directly associated with the product which is sold in it that the customer asks for a "can" of Philadelphia pepper pot, or baked beans, a "bottle" of catsup, a "tube" of toothpaste, a "box" of matches, and a "bag" of peanuts. It

is indeed a rarity when anything is sold today without a package or wrapping of some type. The containers and wrappings become by custom an integral part of the sale. The customer will not buy without them, the merchant cannot, and in many instances may not, sell without them.

. Under the evidence in this case it is clear that in many instances sale prices are set to include the price of the wrappings or containers. The evidence shows a "mark up" of meat, potatoes, bakery products and other items to cover the cost of packaging materials. But the mere fact that the price of such produce may be the same whether or not it is placed in a bag or container, is not important. Whether a merchant makes a profit on wrappings or containers does not determine whether their transfer to the customer is a sale. *Department of Treasury v. Fairmount Glass Works, Inc.,* 113 Ind. App. 684, 49 N.E. 2d 1 (1943).

In New York it was held that sugar and molasses containers sold to refiners and packers did not constitute a sale at retail. *American Molasses Co. of New York v. McGoldrick,* 281 N. Y. 269, 22 N.E. 2d 369 (1939). See also *Consolidated Paper Co. v. Nims,* 306 Mich. 216, 10 N.W. 2d 833.

In *McCarroll v. Scott Paper Box Co.,* 195 Ark. 1105, 115 S.W. 2d 839, 840 (1938) the Supreme Court of Arkansas held that a sales tax was "paid by the final purchaser of individually boxed products upon purchase by the final consumer from a retailer." But see *Wiseman v. Arkansas Wholesale Grocers' Association,* 192 Ark. 313, 90 S.W. 2d 987 (1936) referred to in the dissent in the *McCarroll* case.

The Supreme Court of Arizona held that a box company which sold crates to growers of lettuce, cantaloupes, etc. was selling the crates at wholesale to the

growers for resale even though the increase in value was small and could not be determined with accuracy. *Moore v. Arizona Box Co.,* 59 Ariz. 262, 126 P. 2d 305 (1942).

The bottles and kegs used by a brewer necessarily become an integral part of the manufactured beer intended to be sold ultimately at retail, the Supreme Court of Iowa said in *Zoller Brewing Co. v. State Tax Commission,* 232 Iowa 1104, 5 N.W. 2d 643, 645 (1942).

On the other hand the Supreme Court of Alabama supports the taxing authorities' contention in this case. It has held that the sale of paper by a paper company to a manufacturer for packing its products was not a sale for resale. *Birmingham Paper Co. v. Curry,* 238 Ala. 138, 190 So. 86 (1939); *Poer v. Curry,* 243 Ala. 76, 8 So. 2d 418 (1942).

We recognize that the cases from other jurisdictions have only a limited application to this case. They must be viewed in the light of the particular statutes which they interpret. The factual situations of most differ from the instant case. They do not all specifically hold or say that the sale of wrapping or container products to a vendor or dealer who wraps or places his products therein are wholesale transactions. However, as we read these cases, the generally accepted and applied theory is that wrapping paper, containers and similar products sold to a retailer and passed on by him to his customers are sold to the retailer for resale, and the ultimate consumer and user is not the retailer but his customer.

It is suggested that containers, wrapping paper, and the like, are a part of a merchant's overhead the same as his light, heat and showcases. The difference is that when a sale is made by a merchant to a customer, title and possession to none of these items pass to the pur-

chaser, while possession and title to the containers, wrappings and boxes do pass to the purchaser. The customer and not the merchant is the ultimate user and consumer of the containers and wrapping paper.

It has been said: "The essential distinction between a wholesaler and a retailer is that the person buying from a retailer is the ultimate user or consumer of the article or commodity and does not sell it again, whereas the one buying from a wholesaler buys only for the purpose of selling the article again." *Haynie v. Hogue Lumber & Supply Co. of Gulfport*, 96 F. Supp. 214, 216 (1951).

The *ultimate* user of the containers, wrapping paper and similar articles is not the appellant's customer who is a vendor or dealer in merchandise. He passes the title, possession and ultimate use of the articles he obtained from appellant on to the person who purchases from him.

The court below held in *Dairy Supply & Equipment Co. v. School District of Pittsburgh*, an unreported case decided in 1953, that paper containers for ice cream, milk bottle closures and caps, paper milk bottles and other items similar to those here in question, as well as items of a different type, were resold by the retail vendor, and that the supply company's sale of them to the retailer was a wholesale transaction. In the case now before us the court below ignored its prior holding, presumably upon the assumption that *Hughes v. Pittsburgh*, supra, overruled it. In our opinion, that part of the county court's prior holding to which we referred above, is not overruled by the *Hughes* case, supra.

The court below apparently believed it should impose a liberal construction upon this tax statute, for it said that the construction urged by the taxing au-

thorities favors public interest, and it cites paragraph 5 of Section 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552. This is an erroneous application of that provision of the Statutory Construction Act.

Provisions imposing taxes are to be strictly construed. Section 58 of the Statutory Construction Act, supra, 46 PS §558. It is well settled that any doubt as to the imposition of a tax should be resolved in favor of the alleged taxable. *Kohn v. Philadelphia,* supra; *Philadelphia v. Goldfine,* 151 Pa. Superior Ct. 59, 29 A. 2d 233 (1942). In cases of doubt tax statutes must be construed against the taxing authorities. *Panther Valley Television Co. v. Summit Hill Borough,* 376 Pa. 375, 102 A. 2d 699 (1954); *Pittsburgh Milk Co. v. Pittsburgh,* 360 Pa. 360, 62 A. 2d 49 (1948).

Summarizing, we note that sales to be classified as wholesale transactions under the above statute and ordinance must be made to dealers in, and vendors of goods, wares, and merchandise for the purpose of resale. *Brown & Zortman Machinery Co. v. Pittsburgh,* supra, and *Hughes v. Pittsburgh,* supra. Sales made by appellant to vendors and dealers and used by them or their employees on their premises are retail transactions and the retail sales rate of taxation applies to them.

Containers, wrappings and similar products sold by appellant to vendors and dealers who pass on these products to their customers along with the merchandise contained or wrapped in such products are sold by appellant to the vendors and dealers for resale. We are led to this conclusion (1) because title and possession to the containers and wrappings pass from the said vendors or dealers to their customers, who are the ultimate users and consumers of the containers and wrap-

pings, (2) because it has become customary for a sale to include a container or wrapping, (3) because the Pennsylvania Department of Revenue and the General Assembly when faced with the same problem in administering and applying the sales taxes resolved the matter as we do here, (4) because courts of other jurisdictions generally follow the theory we are adopting, and (5) because if there be doubt concerning this determination, it must be resolved in favor of the taxpayer.

It is the contention of the appellant that the Act of July 13, 1953, P. L. 450 (No. 103) and the Act of July 13, 1953, P. L. 450 (No. 104) prevent the taxing authorities from collecting the additional tax assessed against it for the years 1948 to 1952, inclusive. Act No. 104 above, adds the following new section to the Act of June 20, 1947, P. L. 745, as amended, which imposes the tax for school districts of the first class:

"Section 8.1. Review of Returns; Reassessment of Taxes.—No tax return shall be reexamined nor an additional tax imposed on any taxpayer on account of any rule or regulation which declares certain activities to be included in the retail business classification and which were allowed by the taxing authorities to be included in the wholesale business classification in previous returns, unless such rule or regulation is approved prior to the date such return is required to be filed."

Act No. 103 has a similar provision which relates to the above city tax.

We do not have before us in this record sufficient information concerning the relevant rules and regulations of the school district and city,—what they are, when they were promulgated, what changes were made in them and when. Nor do we have relevant information concerning the circumstances leading up to the

assessments which imposed the additional tax upon the appellant. On the record before us we cannot determine for which years, *if any*, the taxing authorities may be barred from assessing additional taxes of the type here involved.

In view of the fact that our holding on the appellant's other contention makes his contention on this point of relatively little significance to him, and in view of the inadequacy of the record before us, we are directing judgment to be entered in accordance with our determination on what sales of the appellant constituted wholesale transactions and what sales of it constituted retail transactions. We conclude concerning the sales in dispute that 30.07% of the gross sales of appellant during the years in question were wholesale business and that 9.78% of said sales were retail business, and that the appellant's mercantile taxes should be so assessed for the years in question.

Judgment of the court below is affirmed in part and reversed in part and the case is remitted for the entry of judgment in accordance with this opinion.