## Humphrey v. Zoning Hearing Board

*William J. McCarthy III*, and *Coleman & Hyman*, for appellants.

*Rudolph Zieger, Assistant City Solicitor*, and *Alan M. Black, City Solicitor*, for appellees.

DAVISON, *J.*, May 9, 1975—This is an appeal from a decision of the zoning hearing board of the City of Allentown ("board") denying an application for the conversion of premises known as 502 North Second Street, Allentown, Pa., a medium-high-density residential district, into a two-unit apartment structure.

The application initially sought conversion of the

premises to a boarding house but was amended prior to the hearing before the board. The record shows that six male tenants, not related by birth, marriage or adoption, are desirous of residing as a group in the three-story structure.

The zoning ordinance of the City of Allentown, which permits such a conversion in medium-high-density districts only for family units, defines "family" as: "A collective body of two (2) or more persons doing their own cooking and living together as a separate housekeeping unit in relationship based upon birth, marriage, adoption or other domestic bond."

The board, following a hearing, observed that the premises have in fact been used as a boarding house for several years without requisite approval and concluded that a continuation of the present manner of operation of the premises would be detrimental to the neighborhood by reason of nuisance characteristics which arose from the overuse of the property. Moreover, the board found: "Each tenant is a separate individual, not related by birth, marriage, adoption or other domestic bond, as the Board interprets the definition of 'family' under the present zoning ordinance."

Appellants raise two questions in this appeal, namely: (1) whether the board's interpretation of "family" constituted an abuse of discretion and (2) if not, whether such an interpretation is constitutional.

Counsel for appellants contends that the last phrase of the definition. ". . . or other domestic bond" manifests an intention by the drafters of the ordinance to permit unrelated persons sharing

cooking and other household duties to constitute a "family."

As no additional evidence was presented to the court, the scope of our review is limited to a determination of whether the board committed abuse of discretion or error of law. It is not within our province to independently review the record and then render a decision as to the propriety of board action for to do so would be to assume the role assigned by the legislature to the board. The mere fact that the court might have otherwise interpreted the provisions of the ordinance is not sufficient to require reversal: Pyzdowski et ux. v. Board of Adjustment of City of Pittsburgh, 437 Pa. 481, 263 A. 2d 426 (1970); Hunsicker et al. v. Zoning Hearing Board of the City of Allentown, no. 487, January term, 1972; In re Appeal of Richard A. Gray et al. v. Zoning Hearing Board of South Whitehall Township, no. 895, January term, 1975.

We do not find the board's seemingly conventional interpretation of "family" to be of such a shocking or even unreasonable nature to constitute a manifest or flagrant abuse of discretion or error of law. The case before us is wholly unlike those such as Kirsch Holding Co. v. Borough of Manasquan, 59 N.J. 241, 281 A. 2d 513 (1971), where efforts were made to bar generally unruly summer rentals or other antisocial living arrangements. Counsel has informed the court that zoning districts do exist in the city where family occupancy is not mandated; thus, we are not confronted by municipal or board action designed to entirely exclude certain types of occupancy. Consequently, appellants' argument that the board's interpretation is discriminatory as

to unmarried persons is specious and the exclusionary argument is not available in this case as it was in Appeal of Girsh, 437 Pa. 237, 263 A. 2d 395 (1970); Camp Hill Development Company v. The Zoning Board of Adjustment, 13 Pa. Commonwealth Ct. 519, 319 A. 2d 197 (1974); Concord Township Appeal, 439 Pa. 466, 268 A. 2d 765 (1970); or National Land and Investment Company v. Easttown Township Board of Adjustment, 419 Pa. 504, 215 A. 2d 597 (1965).

Further, there is merit to the argument of appellees' counsel with respect to the applicability of the doctrine of *ejusdem generis* for it is an accepted principle of law that where general words follow an enumeration of persons or things, by words of particular and specific meaning, such general words are not to be construed in their widest extent, but are held as applying only to persons or things of the same general kind or class as those specifically mentioned. The doctrine is founded upon the concept that if the legislature intended the general words to be used in an unrestricted sense, the particular classes would not have been mentioned: City of Philadelphia v. Goldfine, 151 Pa. Superior Ct. 59, 29 A. 2d 233 (1942). Thus, "other" persons or things immediately following an enumerated listing is construed to mean "other such like" and with specific reference to the ordinance at hand, the term "other domestic bond" since preceded by the specific relationships of birth, marriage, and adoption, would require the ordinance to read as if it stated, ". . . birth, marriage, adoption, *or other such like* domestic bond."

Turning next to the question of the constitutionality of the ordinance as interpreted, we begin with

the presumption of constitutionality and validity which in the first instance cloaks all such enactments and imposes a rather substantial burden on those alleging unconstitutionality: Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303 (1926); Glorioso Appeal, 413 Pa. 194, 196 A. 2d 668 (1964); Campbell v. Zoning Hearing Board, 10 Pa. Commonwealth Ct. 251, 310 A. 2d 444 (1973); Gaudenzia, Inc. v. Zoning Board of Adjustment, 4 Pa. Commonwealth Ct. 355, 287 A. 2d 698 (1972).

We enjoy the somewhat unique experience of finding a recent United States Supreme Court decision which in our view supports our conclusion that the provision in question is constitutional. In Village of Belle Terre v. Boraas, 416 U.S. 1, 94 S. Ct. 1536, 39 L. Ed. 2d 797 (1974), an increasingly rare venture into zoning law by the court which first upheld the validity of a local zoning ordinance in Village of Euclid v. Ambler Co., supra, a small Long Island Village inhabited by some 700 people, restricted land use to one-family dwellings excluding lodging houses, boarding houses, fraternity houses or multiple dwelling houses. The ordinance defined "family" to mean, "One or more persons related by blood, adoption, or marriage, living and cooking together as a single housekeeping unit, exclusive of household servants. A number of persons but not exceeding two (2) living and cooking together as a single housekeeping unit though not related by blood, adoption, or marriage, shall be deemed to constitute a family." Six students at a nearby university unrelated to each other by blood, adoption or marriage challenged the constitutionality of the Belle Terre ordinance.

As the opinion itself recites, at 39 L. Ed. 2d 803, the appeal was rather broad:

"The present ordinance is challenged on several grounds: that it interferes with a person's right to travel; that it interferes with the right to migrate to and settle within a State; that it bars people who are uncongenial to the present residents; that the ordinance expresses the social preferences of the residents for groups that will be congenial to them; that social homogenity is not a legitimate interest of government; that the restriction of those whom the neighbors do not like trenches on the newcomers' rights of privacy; that it is of no rightful concern to villagers whether the residents are married or unmarried; that the ordinance is antithetical to the Nation's experience, ideology and self-perception as an open, egalitarian, and integrated society."

Mr. Justice Douglas speaking for the court stated also at 803:

"We find none of these reasons in the record before us. It is not aimed at transients. Cf. Shapiro v. Thompson, 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600. It involves no procedural disparity inflicted on some but not on others such as was presented by Griffin v. Illinois, 351 U.S. 12, 76 S. Ct. 585, 100 L. Ed. 891. It involves no 'fundamental' right guaranteed by the Constitution, such as voting, Harper v. Virginia State Board, 383 U.S. 663, 86 S. Ct. 1079, 16 L. Ed. 2d 169; the right of association, NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 78 S. Ct. 1163, 2 L. Ed. 2d 1488; the right of access to the courts, NAACP v. Button, 371 U.S. 415, 83 S. Ct. 328, 9 L. Ed. 2d 405; or any rights of privacy, cf. Griswold v. Connecticut, 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510; Eisenstadt v. Baird, 405

U.S. 438, 453-454, 92 S. Ct. 1029, 1038-1039, 31 L. Ed. 2d 349. We deal with economic and social legislation where legislatures have historically drawn lines which we respect against the charge of violation of the Equal Protection Clause if the law be 'reasonable, not arbitrary' (quoting F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S. Ct. 560, 561, 64 L. Ed. 989) and bears 'a rational relationship to a [permissible] state objective.' Reed v. Reed, 404 U.S. 71, 76, 92 S. Ct. 251, 254, 30 L. Ed. 2d 225."

Specifically addressing itself to the validity of the provision that three or four unmarried people do not constitute a "family" while two unmarried people may, the court said, at 39 L. Ed. 2d 803-04:

"It is said, however, that if two unmarried people can constitute a 'family,' there is no reason why three or four may not. But every line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial function.

"It is said that the Belle Terre ordinance reeks with an animosity to unmarried couples who live together. There is no evidence to support it; and the provision of the ordinance bringing within the definition of a 'family' two unmarried people belies the charge.

"The ordinance places no ban on other forms of association, for a 'family' may, so far as the ordinance is concerned, entertain whomever they like.

"The regimes of boarding houses, fraternity houses, and the like present urban problems. More people occupy a given space; more cars rather con-

tinuously pass by; more cars are parked; noise travels with crowds.

"A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land use project addressed to family needs. This goal is a permissible one within Berman v. Parker, supra. The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion, and clean air make the area a sanctuary for people."

Belle Terre thus stands for the proposition that there is no constitutional infirmity *per se* in designating zones as a sanctuary for family fulfillment and living and in thereby excluding some that might otherwise have been included, particularly where, as here, those excluded in a given zone are not excluded in all zones.

The city's legislative body has deemed it appropriate to define family in the manner indicated. We conclude that in so doing, it has violated no constitutional mandate nor has its board in so interpreting its intent in a traditional manner acted arbitrarily, unreasonably or in abuse of its discretion.

## ORDER

Now, May 9, 1975, it is ordered that the appeal of Louis W. and Mattie T. Humphrey from the decision of the zoning hearing board of the City of Allentown be and the same is hereby dismissed and the decision is affirmed.