# Commercial Credit Company *v.* Girard National Bank.

*Contracts—Sales—Factors—Del credere factors—Principal and agents—Vendor and vendee—Construction of contracts—Intention.*

1. There is no magic in the word "agency"; persons may suppose that their relationship is that of principal and agent when in point of law it is not. If the contract in its terms really constitutes one of the parties a purchaser from the other, the use of

words implying that such purchaser was an agent does not change the relationship.

2. A del credere factor is one who sells goods on credit and who for an additional commission, called a "del credere commission," guarantees the solvency of the purchaser and his performance of the contract. Such factor is a mere surety liable only to his principal in case the purchaser make default.

3. In a proceeding in equity to determine the ownership of certain funds, resulting from the collection of accounts for iron sold, which accounts had been assigned to the plaintiff by a third company, the fund was properly awarded to the assignee of the accounts, as against the company which had manufactured the iron, where it appeared that the assignor had sold the iron in question under a contract with the iron company which provided, inter alia, that the iron company "does hereby appoint (the assignor) as its exclusive sales agent;......the said agent agrees to prosecute diligently the sale of all iron manufactured by the said company, and to secure for it the very best price possible, and the company also agrees to refer all inquiries for the purchase of iron that it may receive direct from time to time, directly to the agent; the price or prices at which said iron shall be sold shall be mutually agreed upon between the said company and its said agent at least once a month or oftener if necessary;......all pig iron manufactured by said company shall be billed by it to the said agent, and payments therefor shall be made by said company on all orders furnished by them to said company on or before the 25th day of each month for all shipments made during the preceding month; the company does hereby agree to pay to the said agent a commission of two and one-half per cent. on the selling price of all iron manufactured by the said company f. o. b. cars furnace," and that the iron company had the right to demand payment of 95 per cent. of its invoices at any time prior to the 25th of the month following shipments, paying interest on such advances up to the regular settlement date, and that the iron company had the right to demand advance payment on iron not sold up to a stipulated amount, and that such iron was to be stored and become the property of the assignor; and in accordance with the practice under this agreement, the assignor had sent orders for the iron in question to the iron company with shipping directions; that the latter shipped the iron direct to the consignee and charged the same to the assignor, sending with the bill a duplicate bill of lading; the assignor sent a bill for such iron to the consignee in their firm name and not as agent; but that the iron company's dealings were entirely with the assignors, and that it had no contractual relations with the consignees of the iron; and that the assignors, or their assignees,

did not collect the price of the iron for the manufacturing company, but on their own account and were bound to pay the company the price of the iron shipped whether or not the consignee paid for it.

4. In such case the assignors of the claims were not merely guarantors to the iron company of the accounts of the persons purchasing from them, but on the contrary they were in fact and in law purchasers of the iron, and therefore the iron company had no interest in their claims against the parties to whom they sold the iron.

Argued April 2, 1914. Appeal, No. 77, Jan. T., 1914, by Emporium Iron Company, from decree of C. P. No. 5, Philadelphia Co., June T., 1913, No. 4381, in equity awarding fund in case of Commercial Credit Company, a corporation, v. Girard National Bank, a corporation, and Emporium Iron Company, a corporation. Before BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity to determine the ownership of a fund in the hands of the Girard National Bank. Before RALS-TON, J.

The opinion of the Supreme Court states the facts.

The court on final hearing awarded the fund to the plaintiff. The Emporium Iron Company appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law of the trial judge and the decree of the court.

*Ruby R. Vale* and *John G. Johnson,* with them *Green & Felt* and *Seth T. McCormick,* for appellant.— Dimmick & Co. were not the vendees of the Emporium Iron Company, but were, as found by the court below, its agents: Shaw v. Fleming, 143 Pa. 104; and 174 Pa. 52; Cabeen & Co. v. Shoener, 11 W. N. C. 448; Shoener v. Cabeen & Co., 11 W. N. C. 222; Laussatt v. Lippincott, 6 S. & R. 386. The consignees of the iron being the debtors of the accounts in controversy, were liable

to the Emporium Iron Company as principal for the merchandise shipped, subject to any set-off which they might have against Dimmick & Co., the agent: Frame v. Wm. Penn Coal Co., 97 Pa. 309; Belfield v. Supply Co., 189 Pa. 189; Finn-Vipond Construction Co. v. Wolf, 12 Pa. Superior Ct. 317; Gilpin v. Howell, 5 Pa. 41; Erie Bank v. Smith, 3 Brewster 9; Girard v. Taggart, 5 S. & R. 19; Merrick's Est., 5 W. & S. 9. The Commercial Credit Company having purchased the accounts with knowledge of the contractual relations existing between Dimmick & Co. and the Emporium Iron Company, took as assignees only the title and rights of their assignor, Dimmick & Co.: Kountz v. Kirkpatrick, 72 Pa. 376; Stokes v. Dewes, 24 Pa. Superior Ct. 471; Brown v. Smelting Co., 48 Pitts. L. J. 265; McMahon v. Sloan, 12 Pa. 229; Agnew v. Johnson, 22 Pa. 471; Bradley v. Whitney, 108 Pa. 362. Dimmick & Co. had no title to said accounts good as against the Emporium Iron Company, but were bound as agents to account to their principal for the said accounts of the consignees and held title to said accounts only as agents: Com. v. Shober, 3 Superior Ct. 554; Hertzler v. Geigley, 196 Pa. 419 (46 Atl. Repr. 366).

*Julius C. Levi,* of *Levi and Mandel,* for appellee, cited: East Lewisburg Lumber & Manufacturing Company v. Marsh, Dunkel, et al., 91 Pa. 96; Citizens' Trust & Surety Company v. Howell, 19 Pa. Superior Ct. 255; Day & Sharpe's Est., 21 Pa. Superior Ct. 118; Jermyn v. Moffit, 75 Pa. 399.

OPINION BY MR. JUSTICE POTTER, July 1, 1914:

The Commercial Credit Company filed this bill in equity against the Girard National Bank, and the Emporium Iron Company, to determine the ownership of certain moneys in the hands of the bank. The controversy is between the Commercial Credit Company and the Emporium Iron Company. The Girard National

Bank is merely a stakeholder, having collected the money in dispute, under an agreement that it should hold it for the benefit of whichever one of the parties should be found to be entitled thereto. The Emporium Iron Company filed an answer to the bill, to which the plaintiff replied. Upon the trial in the court below the facts were found substantially as follows: J. K. Dimmick & Co. assigned to plaintiff certain bills and accounts, amounting in all to $6,502.10. When the assignment was made, plaintiff had knowledge of a contract then existing between Dimmick & Co. and the Emporium Iron Company. That agreement was dated February 20, 1912, and provided, inter alia, as follows: "First—That the 'Company' does hereby appoint J. K. Dimmick & Co. as its exclusive sales agent for the sale of all its production of pig iron, which it may make at its furnace at Emporium, Pa. ·

"Third—Sales. The said 'Agent' agrees to prosecute diligently the sale of all iron manufactured by the said 'Company' and to secure for it the very best price possible, and the 'Company' also agrees to refer all inquiries for the purchase of iron that it may receive direct from time to time directly to the 'Agent.' The price or prices at which said iron shall be sold shall be mutually agreed upon between the 'Company' and its said 'Agent' at least once a month, or oftener if necessary.

"Fourth—All pig iron manufactured by the said 'Company' shall be billed by it to said 'Agent' and payments therefor shall be made by said 'Agent' on all orders furnished by them to said 'Company' on or before the twenty-fifth day of each month for all shipments made during the preceding month."

"Seventh—Commissions. The 'Company' does hereby agree to pay to the said 'Agent' a commission of two and one-half per cent. on the selling price on all iron manufactured by the said 'Company' f. o. b. cars furnace."

The practice under the agreement was as follows: Dimmick & Co. would send an order to the Emporium

Iron Company with shipping directions. The iron company would ship the iron direct to the consignee as ordered by Dimmick & Co., but would charge, and bill the iron, to Dimmick & Co., sending with the bill a duplicate of the bill of lading. Dimmick & Co. sent the bill for the iron to the consignee in their firm name, and not as agents. Under the terms of the contract, Dimmick & Co. were responsible to the iron company for all iron shipped upon orders sent by them, and were bound to make payments to the iron company, without regard to whether the consignees paid them (Dimmick & Co.) or not, and in advance of payment by the consignees, or purchasers of the iron. The iron company's dealings were entirely with Dimmick & Co. and it had no contractual relations whatever with the consignees of the iron. So far as the purchasers of the iron were concerned Dimmick & Co. were their vendors. Dimmick & Co. did not collect the price of the iron from the purchaser and forward it to the iron company, but on the contrary they were bound to pay the iron company, the price of the iron shipped by the latter, whether or not the consignees paid for it. The accounts which Dimmick & Co. assigned to plaintiff, were for iron billed to various consignees under the above described practice. The trial judge found that Dimmick & Co. were the owners of the accounts in question, and had the right to assign them to the plaintiff, and that the proceeds of these accounts now in the hands of the Girard National Bank, should therefore be paid to the plaintiff, the Commercial Credit Company. Exceptions to the findings of the trial judge were filed on behalf of the iron company, and were dismissed by the court below. A final decree was entered, ordering the Girard National Bank to pay over to the Commercial Credit Company the moneys realized from the accounts, which were assigned to plaintiff, and which were collected by the bank, aggregating the sum of $6,-502.10. The Emporium Iron Company has appealed from the decree. Counsel for appellant have presented

their argument under four heads, contending, (1), that Dimmick & Co. were not the vendees of the Emporium Iron Company, but its agents only; (2), that if Dimmick & Co. were agents only, or agents with a del credere commission, the consignees of the iron became liable for the price thereof to the Emporium Iron Company, subject to any set-off which they might have against Dimmick & Co., (3), that the Commercial Credit Company having purchased the accounts with knowledge of the contractual relations between Dimmick & Co., and the iron company, took as assignees, only the title of their assignor, and (4), that Dimmick & Co. had no title to the accounts as against the iron company, and held title only as agents of the latter.

The case turns upon the question, whether or not Dimmick & Co. were properly regarded as purchasers of the iron. If they were, the ownership of the accounts was in them, and their assignment of the bills and accounts, passed a good title to the plaintiff. If not, plaintiff having taken the assignment with notice of the contractual relations between the assignors and the iron company, could not assert title as against the latter. Counsel for appellant contend that Dimmick & Co. were agents of the Emporium Iron Company with a del credere commission. In Black's Law Dict. (2d Ed. 1910), 347, del credere is defined as follows: "A phrase borrowed from the Italians, equivalent to our word 'guaranty' or 'warranty,' or the Scotch term 'warrandice'; an agreement by which a factor, when he sells goods on credit, for an additional commission called a 'del credere commission,' guaranties the solvency of the purchaser and his performance of the contract. Such a factor is called a del credere agent. He is a mere surety, liable only to his principal in case the purchaser made default." In the present case there was nothing in the agreement which made Dimmick & Co. guarantors of the sales to their customers, nor did their liability to the Emporium Iron Company depend upon any default by the purchaser of

the iron.   They were absolutely liable to the iron company for the price of the iron in the first instances, when it was manufactured, or sold.   It is true that they are described in the contract as "agents" and "sales agents," but as was said by Lord Justice JAMES in ex parte White, in re Nevill, L. R., 6 Ch. Ap. 397, (p. 399) : "There is no magic in the word 'agency.'  It is often used in commercial matters where the real relationship is that of vendor and purchaser."   In the same opinion Lord Justice MELLISH said (p. 403) : "Persons may suppose that their relationship is that of principal and agent, when in point of law it is not."   In Ex Parte Flannagans, (U. S. D. Ct. E. D. Va.) 2 Hughes, 264, the court (p. 268) quoted with approval the above language, and added, "If the contract in its terms really constituted them purchasers, the use of words, implying that they were agents does not change the fact."   The statement is appropriate here.   Turning to the written contract between appellant and Dimmick & Co. it is provided in the fourth paragraph that the iron should be billed to Dimmick & Co. on or before the twenty-fifth of each month for all shipments made during the preceding month.   In the previous paragraph it is provided that the prices should be agreed upon by the parties at least once a month, or oftener, if necessary.   Appellant had the right to demand payment of ninety-five per cent. of its invoices at any time prior to the twenty-fifth of the month following shipments, paying interest on such advances up to the regular settlement date, which was the twenty-fifth of the month following shipments.   In the fifth paragraph of the agreement it is provided that appellant should have the right to demand advance payment on iron not sold, up to a stipulated amount, and that such iron should be stored and become the property of Dimmick & Co.   These provisions were not consistent with the theory that Dimmick & Co. were merely guarantors to the iron company, of the accounts of the persons purchasing from Dimmick & Co.   Their liability to

appellant was clearly primary, and not secondary. We are convinced that the court below was right, in its conclusions that Dimmick & Co. were in fact and in law, purchasers of the iron, and that appellant had therefore no interest in the claims of Dimmick & Co. against the parties to whom they sold the iron. The course of dealing between the parties was in entire accord with this view. The trial judge found as matters of fact, that the appellant billed the iron which it shipped on the orders of Dimmick & Co. to that firm, in their own name, and not to them as agents; that the dealings of the iron company were entirely with Dimmick & Co. and that it had no contractual relations whatever with the consignees of the iron; that in so far as the consignees or purchasers of the iron were concerned, Dimmick & Co. were the vendors; that Dimmick & Co. did not as agents collect the price of the iron sold, from their vendees, and forward that amount to appellant; on the contrary, they were, under the contract, bound to pay to appellant the price of the iron, whether or not the vendees or purchasers paid them. These findings were confirmed by the court below in banc, and they are sustained by the evidence. Andrew Brady, who in the first place, made the contract under the name of the Emporium Iron Company, previous to the incorporation of that company, was called as a witness by defendant, and on cross-examination he testified that Dimmick & Co. advanced money on iron billed by appellant to them, before they collected the accounts from the purchasers; that all the merchandise shipped to various consignees, was charged by the iron company to J. K. Dimmick & Co., and that the iron company looked to Dimmick & Co. absolutely for the payment for all iron consigned to the customers of Dimmick & Co. It is true that the iron was shipped on the order of Dimmick & Co. directly to the latter's vendees, but this did not convert the vendees of Dimmick & Co. into purchasers from appellant. Goods may be purchased by one party upon his own account, and he

may have them delivered to a third party, without making the latter in any way liable to the original vendee. Such a transaction is not at all uncommon. Upon the facts of this case as disclosed by the evidence, and under the law properly applicable thereto, we are of opinion that the conclusions reached by the court below are correct.

The assignments of error are overruled and the decree of the court below is affirmed, and this appeal is dismissed at the cost of appellant.