# Commonwealth v. Thorne, Neal & Co., Inc., Appellant.

*Taxation — Mercantile tax — Corporation — Vendors of coal — Principal and agent—Act of May 2, 1899, P. L. 184—Words and phrases—Del credere agent.*

A vendor within the meaning of the Mercantile Tax Act of May 2, 1899, P. L. 184, is one who buys to sell.

A corporation with power to buy and sell coal is liable for the mercantile tax on the whole volume of its gross sales, as provided by the Act of May 2, 1899, P. L. 184, where it appears that it dealt directly with its customers; that it transmitted orders received from them to the operator; that the shipments were made by the operator according to the company's directions; that the coal was charged and billed by the operator to the company, and by the company to its customers; that it collected the money from its customers, and if it was not paid it sued in its own name, and whether the money was collected from the customer or charged off as a loss, the company made up to the operator the price of the coal as its own debt; that the company never had possession of the coal for the account of the operator, but that the deliveries of specific quantities were made directly to customers upon its direction; that in the event of failure to accept by its customer, it did not return the coal to the operator nor retake it for the operator, but resold it for his own account; that the company was limited to a profit of from ten to fifteen cents a ton upon the size of the coal; and that the company was responsible for all bills, and in the event of insolvency or refusal to pay, it was bound to pay the bill.

In such a case the company was not acting merely as a del credere agent working under a fixed commission, but was a principal, buying and selling coal on its own account, and therefore subject to the tax provided by the Act of May 2, 1899, P. L. 184.

The fixed commission or profits of ten or fifteen cents per ton are entirely consistent with the contract of sale wherein profits are limited. The company dealt as a purchaser of coal without assuming the burden of advancing or declining market, and dealt in a safe margin of profit where the minimum loss was the possible insolvency of a purchaser which could generally be provided against.

Argued Nov. 13, 1918.   Appeal, No. 222, Oct. T., 1918, by defendant, from judgment of C. P. No. 2, Philadelphia

Co., March T., 1916, No. 4832, for the Commonwealth on appeal from assessment for mercantile tax in case of Commonwealth v. Thorne, Neal & Company, Incorporated. Before ORLADY, P. J., PORTER, HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Appeal from assessment of mercantile tax. Before WESSEL, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for the Commonwealth for $1,253.50.

*Ira Jewell Williams,* with him *William E. McCall, Jr.,* for appellant.—As defendant, quoad the coal sold for the mining companies, is but an agent, and does not "buy to sell," it is not liable as to those sales as a wholesale vendor: Com. v. Consolidated Dressed Beef Co., 245 Pa. 605; Barton v. Morris, 1 W. N. C. 543; Com. v. Banker Bros. Co., 38 Pa. Superior Ct. 101.

Even if defendant in the case of certain of the coal had received for its commissions on the sale, all of the sales price above a certain sum, that fact neither makes the coal theirs, nor alters their legal status: McCullough v. Porter, 4 W. & S. 177; Bridgeport Organ Co. v. Guildin, 3 Dist. Rep. 649.

Even if the word "selling" in the purpose stated in defendants' charter is to be so narrowly construed as not to legally permit defendants to sell as agents, brokers, factors or commission merchants, that fact is one that can be taken advantage of only by a direct proceeding to enjoin the transaction of that kind of business or to revoke the charter: Western Pa. R. R. Co. App., 104 Pa. 399; Germania Refining Co. v. Alum Rock Gas Co., 226 Pa. 438; Citizens Elec., Etc., Co. v. Lack., Etc., Power Co., 255 Pa. 145.

An undisclosed principal may maintain an action in his own name on any contract made by his agent: Hubbert v. Borden, 6 Wharton 79; Lancaster v. Knickerbocker Ice Co., 153 Pa. 427.

Goods consigned to a commission merchant remain the property of the consignor: Landenberger v. Landenberger, 16 Philadelphia 11; Stiles v. Donaldson, 2 Dallas 264; Com. v. Harris, 168 Pa. 619; Com. v. Fitzpatrick, 8 Philadelphia 613.

*John T. Murphy,* with him *Arthur L. Shay,* for appellee.—Under the provisions of the act it is immaterial what amount a dealer or vendor may make, or what arrangements a dealer may have with a person from whom he buys. Defendant's liability does not depend upon whether it makes a profit or suffers a loss, nor the amount of either: Canal Company, 3 Pa. C. C. R. 490; Pittsburgh Brewers & Bottlers Supply Co.'s Tax, 38 Pa. Superior Ct. 121; Knisley v. Cotteral, 196 Pa. 614; Com. v. Bailey, Banks & Biddle Co., 20 Pa. Superior Ct. 210; Com. v. Crew Levick Co., 256 Pa. 508; Com. v. Campbell, 33 Pa. 380; Com. v. Robb, 14 Pa. Superior Ct. 597; Com. v. Gormley, 173 Pa. 586; Com. v. Consolidated Dressed Beef Company, 245 Pa. 605; Com. v. Abbott Alderney Dairies, 62 Pa. Superior Ct. 451.

OPINION BY KEPHART, J., January 3, 1919:

The question presented by this appeal relates solely to whether the appellant conducted its business during the year 1916, so as to make it liable to the State as a wholesale vender for a mercantile tax "for the whole volume of its business" on its gross sales. Prior to 1916 the appellant regularly filed its reports with the auditor-general accounting for all its gross business, and no distinction was then attempted in any of its activities. For the year 1916 it was assessed a tax by the mercantile appraisers of Philadelphia on an appraised gross business. This action was necessary because the company claimed the bulk of its business was not liable to a tax. The

action of the appraisers was approved by Common Pleas Court No. 2 in an opinion by Judge WESSEL, hence this appeal.

The appellant is a corporation with power to buy and sell coal. It seeks to evade liability for nine-tenths of the tax assessed for the reason that it was levied on a business wherein they acted as an agent for other coal companies. Without discussing any question as to the good faith to the Commonwealth by the appellant's officers, who were officers and directors in these "other companies," with whom they had their several contracts, or the right of the appellant to claim an exemption because it was acting as an agent, while their charter powers gave them the right to buy and sell, we will confine our inquiry to whether the court below was right in holding that they were not agents, but venders within the meaning of the act. The assessment was made under the Act of May 2, 1899, P. L. 184, and a dealer within the meaning of this word as used in this act is one who buys to sell: Norris Bros. v. Commonwealth, 27 Pa. 494; Commonwealth v. Consolidated Dressed Beef Co., 245 Pa. 605; Commonwealth v. Gormly, 173 Pa. 586. The facts as clearly and correctly summarized by the court below are as follows: The appellant dealt directly with and secured its orders from its customers. It transmits those orders to the operator and the shipments are made according to the appellant's directions. The coal is charged and billed by the operator to the appellant and by the appellant to its customers. It collects the money from its customers and if it is not paid it sues in its own name and whether it is collected from the customer or charged off as a loss, the appellant makes up to the operator the price of the coal as its own debt. It sells for its own account. The appellant, in fact, never had possession of the coal for the account of the operator, but the deliveries of specific quantities were made directly to customers upon its direction; and in the event of failure to accept by its

customer, it did not return the coal to the operator nor retake it for them, but resold it for its own account. The appellant was limited to a profit of from ten to fifteen cents a ton, dependent upon the size of the coal. The appellant is responsible for all bills and in the event of insolvency or refusal to pay on the part of the customer, it must pay the bill. The appellant challenges the conclusion or inference that the sales "were for its own account," and urges the sales were in fact for its principal in each case; that the appellant was acting merely as a del credere agent working under a fixed commission; that the profit or price fixed to the consumer by the appellant was a fixed commission or compensation for services. It was not entitled to any increased profit in an advancing market, nor liable for any loss in a declining market. Such profit or loss was the operator's, where the product originated. It admits that all the other facts as found by the court are correct, but they are not the true indicia of ownership but are the usual and customary attributes of certain forms of agency where the agent acts for an undisclosed principal. Taking up these positions in their order, a del credere agent is one under which the agent in consideration of an additional payment engages to become surety to his principal for not only the solvency of the debtor, but for the punctual discharge of the debt: Bouvier's Law Dictionary. The principal cannot sue the del credere agent until the debtor has refused or neglected to pay. He is virtually a guarantor and the purchaser is the primary debtor: Commercial Credit Co. v. Girard National Bank, 246 Pa. 88. There was testimony that the appellant guaranteed the payment of these accounts and they called themselves agents; bearing in mind what was said in Commercial Credit Co. v. Girard National Bank, supra, "it is true that they were described in the contract as 'agents' and 'sales agents,' but as was said by Lord Justice JAMES in ex parte Shite, in re Nevill, L. R., 6 Ch. Ap. 397, (p. 399): 'There is no magic in the word "agency." It is often

used in commercial matters where the real relationship is that of "vendor and purchaser." ' In the same opinion Lord Justice MELLISH said (p. 403) : 'Persons may suppose that their relationship is that of principal and agent, when in point of law it is not.' In Ex Parte Flannagans, (U. S. D. Ct. E. D. Va.) 2 Hughes 264, the court (p. 268) quoted with approval the above language, and added, 'If the contract in its terms really constituted them purchasers, the use of words, implying that they were agents does not change the fact.' " The evidence shows the liability of the appellant was primary, not secondary. The coal was billed directly to it. When shipment was made directly to the customer, or was shipped to some advantageous point, and thence to the customer, the appellant became liable for the price. There was no contractual relation between the operator and the purchaser of the coal. The operator looks solely to the appellant to be paid the price of the coal. The charge on the operator's books is against the appellant. This does not show secondary liability.

The fixed commission or profits of ten or fifteen cents per ton is entirely consistent with a contract of sale wherein profits are limited. This is not an uncommon practice at the present day and the failure to secure profits on advancing markets and the fact that they had no loss on declining markets was due to the very liberal contract made with the sellers of the coal. There was not much opportunity to lose on these contracts, except where there was an irresponsible purchaser. They did not "stock up" and take the chances of the market, but they always acted on the safe side. Their purchases were conducted in one of four methods, all of which had a great tendency to prevent loss, but in some it can easily be seen that a profit could be made beyond that stated.

First. The appellant sold the coal to a customer at the best price obtainable. An order was sent to the operator directing him to ship the car to this purchaser. The car was billed to the appellant at the price sold less ten or

fifteen cents per ton, according to the size of the coal. The coal was billed from the appellant to the customer plus the profit. There is not much opportunity to lose on a contract of this kind and its profit was assured.

Second. The appellant would direct coal to be consigned to some railroad pier for reshipment by boat, or some railroad holding point for reshipment to other points. No price was fixed to the operator, but as soon as the coal was sold and delivered to the consignee the operator billed the defendants for the price sold less the profit as agreed upon according to the size of the coal; that is, egg, stove, chestnut, pea and similar sizes. The appellant took no chances on a declining market here. Instead of buying and holding the coal at the mines and waiting until it had been sold, they placed it at an advantageous point where they could make quick delivery from tidewater or reshipping points. It did not buy the coal at market price when the coal was shipped to these terminals; it took no chance on a declining market.

Third. The coal was directed to be consigned as in the second method, but an arbitrary price was fixed by the operator and the coal was billed to the appellant. When the appellant would sell the coal, an adjustment of the price was made with the operator. If the price was less than the price at which the operator billed the coal, the profit or commission, as they called it, of ten or fifteen cents on the prepared sizes was still secured to the appellant. As in the second and in the first methods, their compensation comes in their fixed profit with no chance of a loss except as we have stated.

Fourth. The coal is sold at the best price obtainable. An order is sent to the operator and the coal is billed to the appellant at an arbitrary price. Subsequently an adjustment is made and if the arbitrary price is more than that billed to the customer, the appellant's profit is protected in this adjustment. This arbitrary price and its future adjustments has its compensations as is very well known.

The point we wish to emphasize is that the appellant deals as a purchaser of coal without assuming the burden of advancing or declining markets and deals in a safe margin of profit where the minimum loss is the possible insolvency of a purchaser which can generally be provided against. The facts as we have indicated clearly warranted the action of the appraisers, and if authorities are necessary the case of Commercial Credit Co. v. Girard National Bank, supra, furnishes a stronger case as to agency than is here presented.

The assignments of error are dismissed and the decree of the court below is affirmed.