Brown & Zortman Machinery Company, Appellant, v. Pittsburgh.

Argued October 12, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Frank W. Ittel*, with him *George L. Eynon* and *Reed, Smith, Shaw & McClay*, for appellant.

*Oscar G. Peterson*, Assistant Solicitor for School District of Pittsburgh, and *Robert Engel*, Assistant

City Solicitor, with them *Mortimer B. Lesher,* Solicitor for School District of Pittsburgh, *Niles Anderson,* Assistant Solicitor for School District of Pittsburgh, and *Anne X. Alpern,* City Solicitor, for appellees.

OPINION BY MR. JUSTICE MUSMANNO, November 9, 1953:

The plaintiff company seeks to have this Court declare it to be a broker and not a dealer. This preferred nomenclature is desired not for academic reasons but for the very practical purpose that a broker pays a lower mercantile tax than a dealer.

Under the provisions of an ordinance of the City of Pittsburgh passed by virtue of Act No. 481 of June 25, 1947, P. L. 1145 (53 PS 2015.1 et seq) the plaintiff was classified as a retail dealer or vendor, to pay a mercantile tax at the rate of 2 mills per dollar on its gross annual sales. Through the operation of the School Mercantile Tax Law (Act of June 20, 1947, P. L. 745, 24 P.S. 582.1 et seq) it was also classified as a retail dealer or vendor to pay mercantile tax at the rate of one mill per dollar on its annual gross sales. The plaintiff brought a suit in equity to restrain the Treasurer of the City of Pittsburgh from claiming and collecting the tax as indicated, and it appealed from the deficiency claim of the School District on the same basis. Both actions were consolidated in the lower court which dismissed the bill in equity and refused the appeal from the School District claim. The plaintiff has now appealed to this Court contending that it should have been assessed on its sales as a broker at the rate of one mill by the City and ½ mill by the School District. Further, that if it may not be classified as a broker, it should then be assessed as a wholesale vendor or dealer and not as a retail vendor or dealer, the rates for which are twice as high as those for the wholesale vendor or dealer.

The Brown & Zortman Machinery Company sells machine tools, such as power operated lathes, drills and presses. These articles are purchased from various manufacturers who guarantee the plaintiff company an exclusive sale territory. When the plaintiff obtains an order it sends it to the manufacturer who ships the item directly to the customer but bills the plaintiff company. The plaintiff company bills the customer, the difference between the price paid or to be paid by Brown & Zortman and the price charged to the customer representing Brown & Zortman's profit. The plaintiff on appeal refers to these profits as "commissions", but this terminology, although more germane to brokerage than vending, cannot of itself create a status which the facts do not support.

The plaintiff argues that since it maintains no stock or showroom it cannot be a vendor. But one may buy and sell without displaying wares. Vendors of locomotives or cranes rarely maintain showrooms for "shopping" display. The articles which the plaintiff sells are huge mechanical contrivances which range in weight from 500 to 100,000 pounds. No purpose could be served in stocking such leviathans of machinery.

The plaintiff advances the novel proposition that unless its business "clearly falls within the category of a dealer or vendor," it must be *presumed* to be a broker. But this argument is not tenable. The plaintiff company falls into one class or the other through objective facts and not through presumption.

In *Keys v. Johnson*, 68 Pa. 42, 43, this Court said: "Brokers are persons whose business it is to bring buyer and seller together. They need have nothing to do with the negotiation of the bargain."

Further: "A broker becomes entitled to his commissions whenever he procures for his principal a party

with whom he is satisfied, and who actually contracts for the purchase of the property at a price acceptable to the owner." The plaintiff here, however, cannot receive any "commission" until the sale is actually consummated and it (the plaintiff company) receives the price of the vended article.

Agency is one of the chief characteristics of a broker, but there is no evidence in this case which paints the title of agent on the plaintiff's door. In fact, the evidence is all to the contrary. The manufacturer's invoices here speak of no agency and usually carry the printing: "Sold to Brown & Zortman Machinery Co." with directions to "Ship to (with name of particular customer here inserted.)"

The plaintiff's invoices to its customers reveal a direct vendor-and-vendee relationship as, for instance, "Customer's Order Number" and "Requisition number" and "Sold to ————" "Ship to same," "Date shipped" and "Shipped from Cincinnati; Terms 30 days net, no discount allowed, f.o.b. Cincinnati, Ohio."

Even the plaintiff's method of bookkeeping indicates that it recognizes itself as a dealer or vendor, and not as a broker. Its books, instead of carrying the phrase "Commissions earned" (which would be customary with a broker), reflect instead, "Sales and purchases." Its ledger carries an account entitled "Sales" and another headed "Purchases."

Furthermore, the method of payment by plaintiff to manufacturer is inconsistent with that of a principal-broker relationship. If the plaintiff remitted payment to the manufacturer within 10 days from the date of invoice, it received a discount from the invoice price. And what is even more important, the plaintiff was liable to the manufacturer regardless as to whether the customer had paid the plaintiff or not. Nor was there testimony or even intimation that the

plaintiff could have been acting as a *del credere* agent.

The plaintiff seeks to attach some significance to the fact that it sold only at prices fixed by the manufacturer, but this does not prove agency; most nationally known and widely advertised products are sold to dealers on such an arrangement.

In *Commonwealth v. Thorne, Neale & Co.*, 264 Pa. 408, this Court decided that a vendor, within the meaning of the Mercantile Tax Act of May 2, 1899, P. L. 184, is one who buys to sell. There, the Thorne, Neale Company obtained orders for coal from customers, and transmitted the orders to coal operators who shipped directly to the customers but billed the Thorne, Neale Company which, in turn, billed the customers. In the event the customers failed to pay, the Thorne Neale Company sued in its own name. We held in that case that Thorne, Neale was not acting as a *del credere* agent, but that it was a principal buying and selling coal on its own account and, therefore, accountable for the mercantile tax as a vendor.

The situation in that case is more or less duplicated here. Brown & Zortman had title to the machinery which it sold, and it sold on its own account; not on the account of the manufacturer. A dealer is one who buys something in order to sell it. (*Norris Bros. v. Commonwealth*, 27 Pa. 494.)

Bouvier (Bouvier's Law Dictionary, 3rd Rev. Vol. 1, p. 775) defines a dealer as follows: "A dealer in the popular, and therefore in the statutory sense of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again." *Com. v. Campbell*, 33 Pa. 380.

In the case at bar all the factors taken together—the invoices from manufacturer to plaintiff and plaintiff to customers the procedures in ordering and billing, the language of the contracts between plaintiff

and manufacturer, the credit risks and plaintiff's bookkeeping practices—leave no doubt that the manufacturer sold to the plaintiff and the plaintiff in turn sold to its customers.

The next question to decide is whether Brown & Zortman, having been adjudicated a dealer, functioned as a wholesale dealer or a retail dealer. The statute and ordinance define a wholesaler: " 'Wholesale dealer' or 'Wholesale vendor' shall mean any person who sells to dealers in, or vendors of, goods, wares and merchandise and to no other persons.' "

The plaintiff in effect argues that because of the hugeness of the articles it sells it cannot be regarded as a retail dealer. But the test of a wholesale dealer is whether its customer buys for the purpose of re-selling. Whether one buys an elephant or a rabbit, the operation cannot be wholesale if the buyer does not intend to resell the beast. The plaintiff further contends that since its customers use the purchased machinery to produce articles which in turn are sold, the customer in effect becomes a retail dealer and that, therefore, Brown & Zortman must be a wholesale dealer. This is an argument which appeals more for its subtlety than for its substance. If this line of reasoning were to be followed it would mean that vendors of peanut roasters and popcorn machines would always have to be considered wholesale dealers because the customers vend their roasted and popped products to others.

The plaintiff has properly been classified as a retail vendor.

Is the plaintiff subject to penalties and interest for delay in meeting its tax obligations? Section 9 (b) of the Statute involved provides: "If for *any* reason the tax is not paid when due in each year, interest at the rate of six per centum (6%) per annum on the

amount of said tax, and an additional penalty of one per centum (1%) of the amount of the unpaid tax for each month or fraction thereof during which the tax remains unpaid shall be added and collected . . ."

This Court said in the case of *Com. v. Southern Pa. Bus Co.*, 339 Pa. 521: "Defendant contends, however, that as the taxpayer has no notice of the deficiency until it has been ascertained at settlement, the imposition of an interest charge for the period prior thereto constitutes a deprivation of property without due process of law. The error in this contention is that it assumes the deficiency is not due until it has been settled by the fiscal officers of the Commonwealth and the taxpayer has been notified thereof."

This same ruling was followed by the United States Supreme Court in the case of *Manning v. Seeley Tube & Box Co.*, 338 U. S. 561, 70 Pa. 386. The lower court here properly held that the plaintiff was liable for interest at the rate of 6 per centum calculated from the due date of the tax.

It also properly held that plaintiff was not liable for penalties in view of the fact that it was first advised that it was taxable as a broker, then as a wholesale vendor and finally as a retail vendor. There is no evidence to show that the plaintiff acted but in good faith in filing its various returns.

We accordingly affirm the orders and final decrees in both cases. Costs on the appellants.