Williams and Company, Inc. *v.* Pittsburgh School District, Appellant.

Argued March 14, 1968.   Before Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

rreargument refused August 5, 1968.

*Justin M. Johnson,* Assistant School Solicitor, with him *Niles Anderson,* School Solicitor, for School District of Pittsburgh, appellant.

*Regis C. Nairn,* Assistant City Solicitor, and *David Stahl,* Solicitor, for City of Pittsburgh, appellant.

*Norman J. Cowie,* with him *Pringle, Bredin, Thomson, Rhodes & Grigsby,* for appellee.

Opinion by Mr. Justice Eagen, July 1, 1968:

These appeals present a dispute between the School District of the city of Pittsburgh (hereinafter District) and Williams and Company (hereinafter Taxpayer), a distributor of metal products located in the city of Pittsburgh, as to the correct amount of mercantile taxes due from Taxpayer for the years 1962 and 1963.

The District imposes a tax on all mercantile sales by authority of the Act of June 25, 1947, P. L. 1145, as amended, 53 P.S. §6851 et seq.  The tax rate on retail sales is one mill based on the gross volume of

business. The rate on brokers' sales is one-half mill based on gross commissions.

About 80 per cent of the Taxpayer's sales are filled by delivery from its own warehouse. The remaining 20 per cent are filled by shipment from suppliers directly to Taxpayer's customers. It is the proper classification for mercantile tax purposes of these sales filled through direct shipment that is the sole subject of this dispute. The District contends they are "retail sales" under the pertinent ordinances and statutes. The Taxpayer argues they are "brokerage transactions." The court below decided the question in favor of the Taxpayer and, since the amount in controversy had already been paid under protest, entered judgments in the Taxpayer's favor for that amount. The District appeals.

These briefly are the pertinent facts:

All orders, including those for the sales in controversy, are solicited and secured by salesmen of Taxpayer. When an order is obtained which involves a quantity in excess of its warehouse supply, the Taxpayer accepts the order from its customer and then places its own order with the supplier for the same quantity of material, but arranges for shipment to be made directly to the customer. Taxpayer never handles the subject of the order. The supplier bills Taxpayer in accordance with its list price. Depending upon the supplier, product and volume, Taxpayer is allowed a discount of 5%, 7% or 10%. Taxpayer bills and collects from its customer in every instance. The charge is 100% of the supplier's list price.

We cannot subscribe to the lower court's conclusion that the sales involved are brokerage transactions. A broker is one whose business it is to bring buyer and seller together. *Keys v. Johnson,* 68 Pa. 42 (1871). He is a person who negotiates a contract of sale *between*

merchants who are the parties to the transaction. See 12 C.J.S., Brokers, §§1a, 3 (1938). The mere fact that the Taxpayer's earnings on these sales are in the form of a discount received from the supplier is not determinative of its status: *Hamberger v. Marcus,* 157 Pa. 133, 27 A. 681 (1893). It is only one circumstance to be considered in evaluating the true situation.

In the instant case, Taxpayer is much more than a "negotiator" between the supplier and the customer. It buys the goods involved on its own account and sells them to the customer on its own terms. Two separate contracts are involved in these transactions. One between Taxpayer and the supplier; another between Taxpayer and its customer. There are several suppliers involved and their contracts with the Taxpayer vary somewhat, but typically the supplier agrees to "sell" and the Taxpayer agrees to "buy." The Taxpayer's contract with International Nickel also provides: "Shipments Direct to Consumers. Shipments of products described in Annex A will also be made direct to consumers purchasing from you, for your account and against purchases of such products made by you from us pursuant to Clause (1) above. On all such shipments all expense of transportation from the points of shipment, freight, trucking, cartage, wharfage tolls, handling charges, demurrage, etc., and the risk in transit, shall be borne by you, and title shall pass to you f.o.b. the points of shipment."

The Taxpayer's contract with Aluminum Company of America provides: "Sales by Distributors. It is intended by the parties that Distributor will sell for its own account Products which it purchases hereunder, and will solicit orders with respect hereto prior to withdrawal thereof from stock, but no sales shall be made by Distributor as agent for, or other representa-

tive of, Alcoa, nor shall any sales or contracts made by Distributor make or purport to make Alcoa a party thereto, nor shall Alcoa incur any liability thereby or therefor."

In the contract between Taxpayer and customer, the latter agrees to take shipment f.o.b. mill, i.e., it assumes the risk of loss in transit and, unless otherwise specified, the cost of the freight bill.

These two separate contracts, one between the Taxpayer and supplier and the other between the Taxpayer and its customer, cannot accurately be collapsed into one, leaving Taxpayer a mere conduit between supplier and customer. The Taxpayer's rights and obligations reflect its status as a real buyer who resells the supplier's products. For example, the suppliers look only to the Taxpayer for payment and the Taxpayer bears the risk of nonpayment by its customers. This indicates that the Taxpayer is a party to two separate transactions, one a purchase from the supplier and one a sale to its own customer. See *Commercial Credit Company v. Girard National Bank,* 246 Pa. 88, 92 A. 44 (1914).

*Tax Review Board v. Elster & Prager,* 406 Pa. 543, 178 A. 2d 611 (1962), heavily relied upon by Taxpayer, is not controlling. Therein the distributor was a mere conduit. The supplier assumed the risk for the loss or damage of the goods while they were in the custody of the distributor and the latter had the right to return any of the merchandise unsold and to pay the supplier only for the merchandise actually sold. The facts in the instant case are more analagous to *Brown & Zortman Machinery Co. v. Pittsburgh,* 375 Pa. 250, 100 A. 2d 98 (1953), and *Commonwealth v. Thorne Neale & Co.,* 264 Pa. 408, 107 A. 814 (1919).

Finally, it is contended the mercantile tax law involved as it is applied to Taxpayer is unconstitutional

because many of its competitors, large manufacturing corporations, some of which are Taxpayer's suppliers, who sell directly to the consumer are not subject to the same tax, and it is, therefore, discriminatory. This contention is without merit. A tax based on a reasonable classification is not unconstitutional simply because its application places one of the classes at a competitive disadvantage. *Commonwealth v. Life Assurance Co. of Pa.*, 419 Pa. 370, 382-89, 214 A. 2d 209, 217-220 (1965).

Reversed.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.