## Slade v. Cheung and Risser Enterprises, Inc.

*John E. Slike*, of *Arnold, Slike & Bayley*, for plaintiff.

*John S. Davidson*, of *Pannebaker, Yost and Davidson*, for defendant.

THOMAS, *S.J.*, 30th Judicial District, Specially Presiding, January 23, 1979—This case is before the court for decision after a bench trial. The complaint refers to the action as an action in assumpsit and trespass but fails to set forth separate counts as required by Pa.R.C.P. 1020(d)(1).

Our decision was somewhat delayed because the issue involved appears to be one of first impression in Pennsylvania. The material facts are not disputed. Adopting in large part the statement set forth in plaintiff's brief we make the following

## FINDINGS OF FACT

On May 27, 1977, plaintiff entered defendant's place of business at the Capital City Mall in Lower Allen Township to inquire about cruises on the Great Lakes in the summer of 1977. The agent who interviewed plaintiff indicated that she would check their books to see what passages, if any, were sailing on the Great Lakes in 1977. Plaintiff left the place of business to shop with his wife at other stores in the center, indicating that he would return shortly. When he returned, the agent advised him that the S.S. Lowell Thomas Explorer was cruising on the Great Lakes that summer and that they would be glad to arrange a cruise for plaintiff and his wife on that ship. Plaintiff then deposited the sum of $200 as a down payment toward the quoted cost of $1,730. The cruise was scheduled to leave Windsor, Ontario, on July 30, 1977.

On July 1, 1977, plaintiff deposited the additional sum of $1,530 with defendant. Both payments were by check made payable to defendant, Empress Travel Agency.

About a week prior to the scheduled embarkation date of July 30, 1977, a representative of defendant agency notified plaintiff that the sailing date would be delayed because of a seamen's strike and that the alternate embarkation date was September 3, 1977, to which plaintiff reluctantly agreed. However, plaintiff became curious about the reason for the delay and by telephone inquired of the harbormaster in Windsor, Ontario, as to the status of the Lowell Thomas Explorer. He was advised that the ship had not been in Windsor at any time that summer and, to the harbormaster's knowledge, it was in Montreal. Plaintiff then contacted the harbormaster in Montreal, who advised him that the ship

had been in Montreal since the first week in April and would not be sailing the Great Lakes because it did not meet the American safety standards, the crew was not acceptable and the ship had been impounded by the sheriff. Plaintiff communicated this information to defendant and defendant later confirmed that the information obtained by plaintiff was correct. As a result, the Lowell Thomas Explorer did not sail on the Great Lakes at any time during the summer of 1977. In fact, it had not sailed the Great Lakes at any time that year. In August, defendant received notice that the cruise line, Midwest Cruises, Inc., had gone into bankruptcy.

Defendant had selected the cruise ship from a reference book of some kind, and did not at any time make any inquiry about the responsibility, financial or otherwise, of the ship or cruise line.

Plaintiff demanded a refund of the moneys he had paid to Empress Travel, to-wit: $1,730, but defendant refused to refund any sum other than the commission which it claimed to have received for the transaction—$168. Defendant claimed the balance of the payment, $1,562, was turned over to Midwest Cruises, Inc., the booking agent for the S.S. Lowell Thomas Explorer, and that they could not obtain a refund as Midwest was bankrupt. Plaintiff refused the $168 and filed this legal action to recover the total sum paid by him.

## ISSUES INVOLVED

The attorney for defendant contends that defendant was agent for the cruise line, and was, therefore, not liable as agent of a disclosed principal. As applied to this case, it is contended by defendant that plaintiff was given a brochure by defendant which indicated that Midwest Cruises,

Inc., was general agent for the ship's owners, Midwest Cruises Panama, S.A., by whom the tickets would be issued. Subsequently tickets were issued and delivered by defendant to plaintiff.

On the other hand, plaintiff contends that defendant is liable on one of two theories, namely, (1) contractually for failing to provide the service which it had contracted to provide, and (2) in trespass for failing to take reasonable and necessary precautions in booking passage on a ship which had then been impounded by the sheriff.

## DISCUSSION

There is no doubt that a person acting as an agent for a disclosed principal is not a party to the contract and that where one deals with an agent who acts within the scope of his authority and reveals his principal, the principal alone is liable for a breach of the contract: Marano, Appellant, v. Granata, 147 Pa. Superior Ct. 558, 561, 24 A. 2d 148, 149-150 (1942); Perlman v. Pittsburgh Cabinets & Builders Supplies, Inc., 191 Pa. Superior Ct. 234, 236, 156 A. 2d 373, 375 (1959).

However, in this case, as well as in most cases, a travel agent does not fit neatly into any theory of agency. In this case, for example, it could be strongly argued, contrary to defendant's contention, that defendant was acting as agent for plaintiff rather than for the cruise line, or in the alternative as agent for both. In this era of increasing travel there is such a wide variety of package tours, travel services, sponsoring organizations[1] and fi-

---

1. Bar associations, medical and dental associations, service clubs, granges, and numerous others.

nancial arrangements that it is impossible to determine who, if anyone, is acting as agent.[2] Certainly, calling a person or association in any form an agent or agency does not necessarily make such person or association an agent: Com. v. Thorne, Neale & Co., Inc., Appellant, 264 Pa. 408, 412, 107 Atl. 814 (1919); Commercial Credit Company v. Girard National Bank, 246 Pa. 88, 92 Atl. 44 (1914). The number and types of so-called "travel agents" add to the problem. Some are individuals, firms and corporations with branches; some are large and some small. There are even individuals without places of business working out of their homes who solicit business only through a listed telephone number and other "travel agencies."[3]

Because of these differences in the travel industry it is frequently difficult to ascertain who in fact is the responsible "disclosed" principal. The present case is again a good example in point. The brochure given to plaintiff lists Midwest Cruises, Panama, S.A. as owners, Midwest Cruises, Inc. as general agents, and in a printed block reading "For reservations, contact *your* travel agent" (emphasis supplied) is rubber-stamped the name Empress Travel, defendant. On the ticket subsequently

---

2. The complexity of modern travel arrangements is discussed at length in an article entitled The Liability of Travel Agents: A Study in the Selection of Appropriate Legal Principles, 40 Temple Law Quarterly 29 (1966). For another article on liability of a travel agency, see also 74 Columbia Law Review 983 (1974).

3. Such individuals have been held to be "independent contractors" and not agents, at least for purposes of service of process: Miller v. Kiamesha-Concord, Inc. Appellant, 420 Pa. 604, 218 A. 2d 309 (1966); Cecere v. Ohringer Home Furniture Company, 208 Pa. Superior Ct. 138, 220 A. 2d 350 (1966).

given to plaintiff by defendant the name Midwest Cruises, Inc. appears on the front cover and on the back cover appear the following names under the heading general agents: Clarke Transportation Canada Ltd., Midwest Cruises, Inc. and Amtour Corporations. The fine print of the Contract of Carriage contained in the ticket purports to be between Midwest Cruises, Panama, S.A. and each passenger. Given this "hodgepodge" of names and partly descriptive titles, the average, and even the more experienced, traveler could not, at least without extended inquiry and investigation, determine who was responsible for furnishing the services and accommodations for which he contracted.

Definitions would be of no help to the ordinary traveler and are of very little help to the court in reaching a solution to the problem. Restatement, 2d, Agency, §1, has the following definition of agency: "(1) Agency is the fiduciary relation which results from the manifestation of consent of one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. (2) The one for whom action is to be taken is the principal. (3) The one who is to act is the agent." General agent, so often used in travel "literature" as in this case, is defined in §3: "(1) A general agent is an agent authorized to conduct a series of transactions involving a continuity of service. (2) A special agent is an agent authorized to conduct a single transaction or a series of transactions not involving continuity of service." Finally, insofar as definitions are relevant to the issue in this case, section 2(3) of Restatement, 2d, Agency, defines independent contractor thus: "(3) An independent contractor is a person who contracts with another to do something for him but who is not

controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent."

By definition, therefore, it would appear that a travel agent of the type of defendant in this case is either a special agent or an independent contractor. Adopting either status does not solve the problem. If defendant is treated as a "special agent" the question remains, agent for whom? A question also remains if defendant is regarded as an independent contractor because under the Restatement definition an independent contractor may still be acting as agent.

It is apparent from the foregoing that each case of this type must be decided on an ad hoc basis, but after careful consideration we are of the opinion that the approach suggested by the author of the Temple Law Quarterly article would be extremely helpful in solving most, if not all, of the problems which can and undoubtedly will more frequently arise in the area of travel and recreation. That approach is summarized by Professor Paul C. Wohlmuth at page 56 of the article as follows:

"Confusion and conflict in this area can only be avoided by a thorough appraisal of the factual and theoretical underpinnings of liability and a selection of relevant legal principles based on this appraisal. Such an approach has been taken here and has led to the following conclusions:

"1) The travel agent resembles more closely an independent middleman than an agent.

"2) The interaction between the travel agent, client, and hotel or carrier is best viewed as an interweaving of contractual relations.

"3) Even if the travel agent could be considered an agent, it merely clouds the issue to treat him as such for the purpose of liability. The issue is: Should the travel agent be held liable to the client under various circumstances? This question, aside from the problem of negligence, can best be answered by treating the travel agent as one who contracts with his client and, then, by determining what the travel agent expressly, impliedly, and as a matter of legal imposition, undertakes to do in his relations with the client."

Using that approach it is clear that defendant in this case should be held liable to plaintiff for the full amount paid. Certainly at the time plaintiff requested defendant to secure reservations for him defendant implied, and plaintiff had a right to expect, that such accommodations would be secured on a vessel which was then available and able to furnish said accommodations. No lesser legal obligation should be imposed. Here, at the time the travel agent made the reservations and accepted plaintiff's deposit, the cruise ship not only did not meet safety standards or have an acceptable crew, but also had been impounded by the sheriff. Subsequently, and when the situation remained unchanged, defendant accepted the balance from plaintiff for accommodations which could not be furnished. We fail to see on what theory plaintiff should suffer the loss in such circumstances. To so hold would be in effect to permit a travel agent to book reservations on a nonexistent hotel, carrier or cruise line merely on the strength of a listing in a telephone or other directory without liability.

We hasten to add that on the facts of this case it is

our opinion that defendant is also liable even if considered as an agent or as an independent "contractor" acting as agent. One reason for so holding is that we reject defendant's contention that defendant was agent for the cruise line.[4] At all relevant times defendant was, in our opinion, acting on behalf of plaintiff. Accordingly defendant owed at least the duty to use reasonable skill and effort to ascertain and inform plaintiff of facts not merely relevant but crucial to plaintiff: Restatement, 2d, Agency, §§378, 379 and 381.

Even if we accepted the contention that defendant was agent for the cruise line, we reject the argument that the cruise line was a disclosed principal. The confusion and uncertainty existing as to the identity of the responsible principal was, in our opinion, equivalent to no disclosure or partial disclosure. Sections 321 and 322 of Restatement, 2d, Agency, make the agents of an undisclosed or partially disclosed principal parties to a contract and section 4 defines each. Section 4, comment (f), explains in detail:

"Whether a principal is a disclosed principal or a partially disclosed principal depends upon whether or not the third person has sufficient information or other notice as to his identity. This is a question of

---

4. We note, although we do not reach our rejection of defendant's argument on this basis alone, that the brochure stamped by defendant with its name appears under the words printed by the owner or general agent "For reservations contact *your* travel agent" (Emphasis supplied). This wording frequently appears on brochures and other advertising and clearly indicates that the "travel agent" is considered by the tour owner or operator as representing the traveler.

degree. If the manifestation of the principal or agent to the third person, or the information the third person has, is such that he is able, or should be able, to distinguish the principal from all others, or he otherwise has notice of the principal's identity, the principal is disclosed. If the manifestation is ambiguous and the third person has no reason to know which of two or more principals the agent is representing, the principal is partially disclosed."

The case of E.A. McQuade Travel Agency, Inc. v. Domeck, 190 So. 2d 3 (Fla. 1966), which is quite similar on the facts of this case, held that merely disclosing the name of the cruise ship was not a sufficient disclosure of identity to relieve the travel agency from liability for the purchase price of the cruise.

Finally, if we treat the action as being in trespass notwithstanding the failure to comply with the Rules of Civil Procedure we would hold defendant grossly negligent in failing to make at least some inquiry concerning the availability of the cruise ship and financial status of the owners and operators of the cruise.

Pursuant to the foregoing we will render a decision by separate document attached hereto.

## DECISION

And now, January 23, 1979, in accordance with the foregoing opinion, the court finds in favor of plaintiff and against defendant and awards plaintiff the sum of $1,730 with interest from July 1, 1977, together with costs of suit.

Exception is noted for defendant.